STATE of Utah, Plaintiff and Appellee,

v.

Dennis L. WAITE, Defendant and Appellant.

No. 890615–CA.

Court of Appeals of Utah.

Dec. 18, 1990.

Ronald S. Fujino (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., for plaintiff and appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

BILLINGS, Judge:

Defendant Dennis L. Waite appeals his conviction of five counts of securities fraud in violation of Utah Code Ann. § 61–1–1 (1989), and five counts of theft by deception in violation of Utah Code Ann. § 76–6–405 (1990). We reverse and remand for a new trial.

In October 1986, defendant created Elite Investment Association ("Elite"), a limited partnership, with himself as general partner and Arlo James and Donald Stoddard as limited partners. The three partners formed Elite in order to pool money for investment purposes. Defendant conducted the business of Elite, including researching bonds and advising the group which bonds to purchase.

Defendant tendered his resignation "as partner, trustee and bookkeeper in the Elite Investment Association," on March 12, 1987, and on that same day turned over the records of Elite. After June 1987, Elite ceased purchasing bonds.

Defendant met with Fawn and Ken Kendrick in September 1987, to help them with their taxes. Defendant recommended a municipal bond tax shelter and telephoned the Kendricks in November 1987, stating he had a "very good bond with West Jordan." The Kendricks gave defendant a check for $10,000 made out to Elite. The Kendricks later received a "Certificate and Receipt" signed by defendant as trustee for Elite, indicating the Kendricks owned 100% of a West Jordan Sewer and Water municipal bond. In January 1988, defendant informed the Kendricks he had an interest check for them. After several phone calls to defendant requesting the check, the Kendricks finally received a check for $372.30. In May 1988, the Ken-

dricks began trying to contact defendant, but were unable to reach him until July 1988. By that time, Mrs. Kendrick had spoken with the West Jordan City Attorney and had been informed no municipal bonds had been issued since 1984. When confronted, defendant explained he had purchased comparable, FDIC insured Summit County bonds instead, pursuant to Mr. Kendrick's consent. Mrs. Kendrick requested that the bonds be put in the Kendricks' names. Defendant stated he was in the process of doing that and sent the Kendricks a copy of a Park City revenue bond registered to Elite and purchased in 1986. Concerned about the situation, the Kendricks contacted the Utah Securities Division of the Utah Department of Business Regulation ("Securities Division").

During 1987 and 1988 defendant also sold bonds to four other clients who had come to him for tax assistance. In each case, the clients received certificates or receipts from either defendant or Elite Investment indicating they owned a designated percentage of a bond.

In August 1988, during investigation of defendant's activities, the Securities Division obtained court orders for access to specified financial records of defendant. In April 1989, defendant moved to suppress the financial records obtained pursuant to these orders because the Securities Division did not comply with the notice requirements of the Financial Information Privacy Act. See Utah Code Ann. §§ 78–27–45 to –50 (1987). The trial court denied defendant's motion to suppress.

During defendant's two-day jury trial, the state introduced evidence outlining defendant's bond transactions, including the testimony of five victims, defendant's two former partners, and the Securities Division investigator. The state also introduced copies of defendant's financial records, a summary of these financial records prepared by the investigator, and stipulated testimony based upon these financial records as to the use of money withdrawn from defendant's account and

the absence of bonds issued to defendant or Elite.

The jury found defendant guilty of five counts of securities fraud and five counts of theft by deception. The court then sentenced defendant to one to fifteen years for each of the five securities fraud counts and four of the theft by deception counts, and zero to five years for the remaining theft by deception count.

On appeal, defendant assigns several errors. First, defendant claims the trial court erred in denying his motion to suppress his financial records where the Securities Division did not give him notice of the order. Second, defendant claims the court erred in admitting a summary of his subpoenaed financial records prepared by the investigator. Third, defendant contends the court erred in convicting him of both securities fraud and theft by deception for the same acts. Finally, defendant asserts the court improperly sentenced him to five one to fifteen year sentences for securities fraud. Because we find the trial court committed prejudicial error by admitting defendant's financial records in violation of the Financial Information Privacy Act, we do not reach the other issues presented on appeal.

## FINANCIAL INFORMATION PRIVACY ACT

### A. Failure to Notify of Order Allowing Access

■ Defendant contends the trial court erred in refusing to grant his motion to suppress the admission of his financial records obtained by the Securities Division. He claims the documents were inadmissible in his criminal trial as he was not given notice of the order allowing access to his financial records as required by the Financial Information Privacy Act ("Act"). Utah Code Ann. §§ 78–27–45 to –50 (1987).

Generally, the Act prohibits financial institutions from disclosing the financial records of a patron to the state or any other political subdivision unless the state or agency either obtains written permission from the patron or a court order. Utah Code Ann. § 78–27–45 (1990). Under section 78–27–46 of the Act, a patron must be given notice where the seeking party obtains a court order for disclosure. This section provides, in pertinent part:

> In the event a court order is obtained pursuant to § 78–27–45, notice thereof shall be given to the person about whom information is sought within three days of the day on which service of the order is made upon the financial institution, but no later than seven days before the date fixed in the order as the day upon which the records are to be produced or examined. The notice shall be accompanied by a copy of the order which has been served upon the financial institution and the motion or application upon which it is based and shall be accompanied by a statement setting forth the rights of the person under § 78–27–47.

Utah Code Ann. § 78–27–46 (1987).

Under section 78–27–49 of the Act, if a state agency fails to comply with the disclosure procedures of the Act, the ordered documents or any derivative evidence may not be admitted in court. Section 49, in relevant part, provides: "No information obtained directly or indirectly from a financial institution in violation of the provisions of this act shall be admissible in any court of this state against the person entitled to notice." Utah Code Ann. § 78–27–49 (1987).

The trial court denied defendant's motion to suppress and allowed defendant's financial records to be admitted at trial even though it was undisputed that defendant had not received notice of the orders. The court based its decision on an exemption from the notice requirement for "official investigations" contained in section 78–27–50 of the Act as it found the court orders were obtained by an assistant attorney general in the course of an investigation by the Securities Division. Section 50 provides:

Nothing in this act shall apply where an examination of said records is a part of an official investigation by any local police, sheriff, city attorney, county attorney, the attorney general, or the State Department of Public Safety, or the Bureau of Recovery Services, Department of Social Services.[1]

Utah Code Ann. § 78–27–50 (1987).

Thus we must decide whether the trial court correctly concluded that disclosure of the orders was not required because the documents were requested in the course of an official investigation by the attorney general within the meaning of section 78–27–50 of the Act.

Whether a statute applies to a particular set of facts is a question of law. *See, e.g., Klinger v. Kightly,* 791 P.2d 868, 869 (Utah 1990). We review a trial court's conclusions of law for their correctness, and afford them no particular deference. *Provo City Corp. v. State,* 795 P.2d 1120, 1121 (Utah 1990) (citing *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988)).

On appeal, the state concedes the Securities Division's investigation of defendant was not an official investigation conducted by the attorney general and thus did not fall within the exemption from the notice requirement of the Act. The state thus admits on appeal that defendant's motion to suppress should have been granted and his bank records should not have been admitted at his trial.

We agree with the parties on appeal that the exception relied upon by the trial court was inappropriate and that under sections 78–27–46(1) and 78–27–49, defendant's motion to suppress should have been granted. Although an assistant attorney general signed the applications for the disclosure orders, the applications were captioned "In

the Matter of An Investigation by the Utah Securities Division" and indicated the "Securities Division of the Utah Department of Business Regulation" was requesting access to the records. There is nothing in the record to demonstrate any further involvement in the investigation by the attorney general.

Mere signing of pleadings by an assistant attorney general in his or her capacity as an attorney representing a state agency does not support a conclusion that the attorney general is conducting the investigation within the meaning of the Act. Such an interpretation of the exception provided in section 78–27–50 would create an "official investigation" exemption so broad it would effectively swallow the general rule requiring notice of financial record access orders under the Act.[2]

### B. Prejudicial Error

██ Although the state concedes defendant's bank records were erroneously admitted at trial, the state contends such error was harmless and does not require a reversal of defendant's convictions as there is not a reasonable likelihood of a more favorable result for defendant had the bank records and other evidence based upon them been excluded at trial. Defendant claims that without the bank records and the investigator's summary and testimony based on those records, he would not have been convicted of either securities fraud or theft by deception.

The Utah Supreme Court has enunciated the basic standard for determining whether an error is prejudicial and thus reversible. "In order to constitute reversible error, the error complained of must be sufficiently prejudicial that there is a reasonable likelihood of a more favorable result for the

---

1. Utah Code Ann. § 78–27–50 was amended in 1989 and now exempts "official investigation by any local police, sheriff, city attorney, county attorney, the attorney general, the Department of Public Safety, the Office of Recovery Services of the Department of Human Services, or the Department of Commerce."

2. Defendant also claims, and the state concedes, that the summary of the bank records prepared by the Securities Division investigator, based upon the improperly admitted financial records, was improperly admitted into evidence.

defendant in its absence." *State v. Featherson*, 781 P.2d 424, 431 (Utah 1989); *see also State v. Knight*, 734 P.2d 913, 920 (Utah 1987); *State v. Tillman*, 750 P.2d 546, 561 (Utah 1987).

Defendant was convicted of both securities fraud and theft by deception in violation of two separate statutes. Securities fraud is defined in Utah Code Ann. § 61-1-1 (1989) as follows:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to: (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Theft by deception is defined in Utah Code Ann. § 76-6-405 (1990) as follows: "(1) a person commits theft by deception if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof."

We must decide whether there is a reasonable likelihood of a more favorable result for this defendant under either or both statutes without the evidence obtained as a result of the Securities Division's violation of the Act.

In evaluating the erroneously admitted evidence, we note the bank records themselves, as provided to the jury, consisted of thirty-three pages of photocopies of all deposits, withdrawals, and transactions involving the Utah State Credit Union account of Elite Investment Association, Dennis L. Waite.[3] Among these records were copies of the deposited checks given to defendant by each of the five victims. The records also include numerous withdrawals

by defendant in the form of both cash and cashier's checks, with no indication money went toward the purchase of any bonds.

The state also introduced a copy of a one page bank statement for the same account covering the period from January 1987 through June 1988 concisely displaying the amounts and dates of the transactions forming the basis of defendant's convictions.

At trial, during direct examination, each victim was asked by the prosecutor to identify his or her check or checks payable to defendant or Elite. A copy of each was then admitted into evidence. These same checks were also admitted as part of the thirty-three page set of bank records.

In evaluating the evidence obtained indirectly from the financial institution as a result of the Securities Division's violation of the Act, we note the investigator testified at trial as to his review of defendant's bank records and traced the funds of the victims through the account. He testified he found the checks of the five victims deposited in defendant's account and he also found withdrawals used not to purchase bonds, but for defendant's personal benefit. He also testified he did not find any withdrawals that went to purchase bonds.

The state also introduced a summary of the account prepared by the investigator after he obtained access to the records. This summary contained not only the date and nature of transactions, but also included a description of the source and ultimate use of funds involved in transactions.

At trial, the state further introduced stipulated testimony based on these financial records as to the disposition of four cashier's checks withdrawn from the account. A check for $10,000 issued to defendant on December 11, 1987, was given to Jeff Yates as a down payment on a Chrysler automobile. A check issued to defendant

---

**3.** The Securities Division investigation also apparently involved disclosure of records of other accounts. The only records admitted in this trial, however, are from the Elite Investment, Dennis L. Waite account at the Utah State Credit Union.

on January 15, 1988, for $1,000 was used by defendant as partial repayment of a loan. A check for $3,000 issued to defendant on February 1, 1988, was also used to repay a loan. A check for $5,310.30 was made payable to the Internal Revenue Service.

Defendant's financial records obtained in violation of the Act constituted the heart of the state's case. Although the state did introduce the testimony of the victims [4] and defendant's partners, the erroneously admitted evidence in this case was substantial and central to defendant's convictions. We cannot say that in the absence of this documentary evidence there was not a reasonable likelihood of a more favorable result for this defendant under both the securities fraud and theft by deception statutes. We therefore reverse defendant's convictions and remand for a new trial without the tainted evidence.[5]

BENCH and GREENWOOD, JJ., concur.

---

**4.** The record is unclear as to the origin of much of the victim testimony in this case. The record indicates the Kendricks contacted the Securities Division but it is unclear as to whether testimony of the other victims may have been derived as a result of the Securities Division obtaining defendant's bank records in violation of the Act. This issue should be explored further before defendant's retrial.

**5.** It is important to note that the state also concedes, and we agree, defendant was improperly sentenced for securities fraud to five terms of 1 to 15 years because Utah Code Ann. § 61–1–21 (1989) prescribes 0 to 3 year terms as the appropriate sentence.

Because of our ruling that defendant should receive a new trial, we do not reach the issue of whether he was properly convicted of both securities fraud and theft by deception. We note, however, that we find troublesome the state's argument that the jury could have separately considered both defendant's offer and sale of the bonds as separate acts, despite the absence of any clarifying jury instructions to this effect, and thus properly found him guilty of both securities fraud for the offer and theft by deception for the sale of the bonds.