Kevin SLISZE, Plaintiff and Appellant,

v.

STANLEY–BOSTITCH, a Rhode Island corp., Defendant and Appellee.

No. 960165.

Supreme Court of Utah.

March 5, 1999.

Rehearing Denied June 3, 1999.

Peter C. Collins, Salt Lake City, for appellant.

Michael P. Zaccheo, Christian W. Nelson, Salt Lake City, for appellee.

DURHAM, Associate Chief Justice:

¶ 1 Appellant Kevin Slisze sustained head injuries in an accident involving the use of a pneumatic nailer ("nailer"). Slisze brought suit against the manufacturer of the nailer, Stanley–Bostitch ("Stanley"), for negligence and strict product liability asserting that the tool was defective. Slisze seeks review of the following: (a) the dismissal of his negligence claim; (b) the admission of federal OSHA safety standards for the purpose of establishing a rebuttable presumption of non-defectiveness under Utah Code Ann. § 78–15–6(3); (c) the exclusion of testimony regarding foreign government standards prohibiting "contact-trip" nailers for the purpose of rebutting the presumption of non-defectiveness; and (d) an order granting partial summary judgment dismissing Slisze's claim for punitive damages. We affirm.

¶ 2 The nailer used at the time of the accident was a "contact-trip" model. The "contact-trip" nailer allows its operator to discharge nails regardless of whether the operator first pulls the gun's trigger or depresses the nailer's nose contact element, as long as both are used. The "sequential-trip" model, on the other hand, also manufactured

and sold by Stanley, requires that the nose contact element be depressed first and the trigger pulled second for the nail to be discharged. The "sequential-trip" mechanism makes it more difficult for nails to be discharged unintentionally and is generally considered to be safer.

¶ 3 A co-worker was using the nailer to "toenail" two pieces of lumber together at the time of the accident. The nail ricocheted off the wood, struck Slisze in the temple and penetrated his skull. Slisze filed a complaint alleging negligence, strict liability, and breach of warranty claims against Stanley. Slisze moved successfully to bifurcate the liability and damages issues.

¶ 4 During the liability phase of the trial, the district court dismissed Slisze's negligence claim on the grounds that the manufacturer did not have a duty to market the safer "sequential-trip" model exclusively, and because the strict liability claim would adequately compensate the plaintiff if the jury determined that the product was defective. The jury was not instructed as to the negligence claim, nor did the special verdict form provide any questions about negligence.

¶ 5 During the trial, the court admitted OSHA standards as evidence to show compliance with "government standards," creating a rebuttable presumption of non-defectiveness under Utah Code Ann. § 78–15–6(3). Furthermore, the court refused to admit testimony regarding foreign safety standards that prohibited the manufacture and sale of "contact-trip" style nailers.

¶ 6 At the conclusion of the trial, the jury returned a verdict in favor of Stanley, determining that the product was not defective or in a defective condition at the time it left Stanley's control. This appeal ensued.

## I. NEGLIGENCE

¶ 7 We address two issues regarding Slisze's negligence claim. The first is whether it is proper for a lower court to allow a negligence claim in conjunction with a strict liability claim under Utah Code Ann. § 78–15–6 or whether our strict liability statute subsumes all claims involving products. Whether a statute applies to a particular set of facts is a question of law that we review de novo. *See State v. Pena,* 869 P.2d 932, 938 (Utah 1994); *see also State v. Waite,* 803 P.2d 1279, 1282 (Utah App.1990).

¶ 8 A statute will be construed according to its plain meaning. *See Bonham v. Morgan,* 788 P.2d 497, 500 (Utah 1989) (per curiam). Section 78–15–6 reads:

> In any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product:
>
> (1) No product shall be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.
>
> (2) As used in this act, "unreasonably dangerous" means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.
>
> (3) There is a rebuttable presumption that a product is free from any defect or defective condition where the alleged defect in the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were adopted.

We hold that the plain language of the statute does not preclude a party from jointly bringing common law negligence claims and that it is, therefore, possible to simultaneously bring a negligence and a strict liability claim. *See Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d 832, 834 (Utah 1984); *see also Jiminez v. Sears, Roebuck & Co.,* 4 Cal.3d 379, 93 Cal.Rptr. 769, 482 P.2d 681, 683–84 (1971); *Fischer v. Cleveland Punch & Shear*

*Works Co.*, 91 Wis.2d 85, 280 N.W.2d 280, 286 (1979).

¶ 9 The second issue is whether Stanley has a duty to Slisze sufficient to support a negligence claim. " '[T]he question of whether a duty exists is a question of law' " and is reviewed for correctness. *AMS Salt Indus. v. Magnesium Corp. of Am.*, 942 P.2d 315, 319 (Utah 1997)(quoting *Loveland v. Orem City Corp.*, 746 P.2d 763, 766 (Utah 1987)). We conclude that the district court properly dismissed Slisze's negligence claim alleging "unsafe and unreasonable conduct" in the marketing of an allegedly unsafe but non-defective product, because Slisze proved no duty. " 'One essential element of a negligence action is a duty of reasonable care owed to the plaintiff by [the] defendant. Absent a showing of duty, [the plaintiff] cannot recover.' " *AMS Salt*, 942 P.2d at 320 (quoting *Beach v. University of Utah*, 726 P.2d 413, 415 (Utah 1986)).

¶ 10 In order to prevail on a negligence claim, there must be evidence of a duty breached. We have never, nor has any other jurisdiction, recognized a duty on the part of a manufacturer to refrain from marketing a non-defective product when a safer model is available, or a duty to inform the consumer of the availability of the safer model.

¶ 11 In this case, Slisze seeks to recover for the negligent marketing of a less safe, although non-defective, product. Slisze contends that, even though the product may not be found to be unreasonably dangerous according to our strict product liability statute (which requires that a product be dangerous "beyond the contemplation of an ordinary consumer" in order to be considered defective), the manufacturer should still be liable for negligent conduct. *See Mather v. Caterpillar Tractor Corp.*, 23 Ariz.App. 409, 533 P.2d 717, 719 (1975); *Fischer*, 280 N.W.2d at 286. While a manufacturer may act negligently without its product being unreasonably dangerous (and while the jury may be instructed on both theories), Slisze alleges that Stanley was negligent in simply marketing a product that is less safe than another. Essentially, Slisze asks us to create a new duty. This we decline to do.

¶ 12 In *AMS Salt*, we said that the following factors should be considered when ascertaining whether a duty of reasonable care exists: (1) the extent that the manufacturer could foresee that its actions would cause harm; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against it; and (4) the consequences of placing the burden on the defendant. *See AMS Salt*, 942 P.2d at 321. It is important to emphasize here that Slisze is essentially asserting that Stanley had a duty to stop marketing a product that is less safe than another, although not defective, or to actively warn and inform consumers that the product is less safe. In weighing the factors set out in *AMS Salt*, we are not persuaded that it is necessary or wise to recognize a duty requiring manufacturers to discontinue manufacturing less safe but non-defective products; there has been no showing that the likelihood of injury would be reduced enough to outweigh the costs and burdens of discontinuation.

¶ 13 Alternatively, Slisze wants this court to impose a duty on the manufacturer to inform consumers about the safer model. Considering the *AMS Salt* factors, we are again unconvinced. To require information to be provided to consumers on the availability of the safer model would, in this case (where the distinctions in the trip features are obvious), reduce the likelihood of injury so minimally that to impose the duty would be unduly burdensome. Such a burden might well act as a disincentive for manufacturers in the development of safer products when such development could force the discontinuation of the less safe model. Consequently, Slisze's negligence claim fails for lack of duty, and it was proper for the lower court to dismiss it. "[T]here is no duty to make a safe [product] safer." *Ruff v. County of King*, 125 Wash.2d 697, 887 P.2d 886, 891 (1995).

¶ 14 A non-defective nailer may present some safety risks that cause it to be dangerous for its intended use, but not "unreasonably dangerous" according to the statutory definition; that is, dangerous "to an extent beyond which would be contemplated by the

ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer." Utah Code Ann. § 78–15–6(2). This definition includes products with latent dangers.

■ ¶ 15 A manufacturer has a duty to warn against a product's latent hazards that are known to the manufacturer but unknown to the consumer. *See Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wash.App. 432, 739 P.2d 1177, 1182 (1987); *see also* Restatement (Second) of Torts § 388 cmt. b (1965). However, the plaintiff here has not challenged the adequacy of the warning on the "contact-trip" nailer as to the dangers it presents, but rather contends that Stanley was negligent for not sufficiently informing consumers that the "sequential-trip" nailer was a safer product. We reject this contention and hold there is no duty for Stanley to warn or inform the consumer that a safer model exists. The jury determined that the "contact-trip" nailer was not defective and that Stanley's decision to market the product was not negligent.

¶ 16 Furthermore, if the product were to be determined defective, recovery under the strict products liability statute would be sufficient to compensate plaintiff, making a negligence claim superfluous. We affirm the district court's dismissal of the negligence claim for failure to establish the requisite duty to the consumer.

## II.  OSHA STANDARDS

■ ¶ 17 Slisze also asserts that the lower court erred in admitting federal OSHA standards as evidence of "government standards established for that industry" under Utah Code Ann. § 78–15–6(3), which creates a rebuttable presumption of non-defectiveness. *See* 29 C.F.R. § 1926.302(b)(safety and health regulations for pneumatic power tools). The trial court is "granted broad discretion in determining the relevance of proffered evidence," and we review the trial court's decision for abuse of that discretion. *Hall v. Process Instruments & Control*, 890 P.2d 1024, 1028 (Utah 1995). Slisze argues that OSHA regulations pertain exclusively to those in an employer-employee relationship and, because Slisze was a consumer and not the employee of Stanley, the standards should not be admitted.

■ ¶ 18 In determining the appropriate standard of conduct, the Restatement permits courts to adopt the standard from a legislative enactment or an administrative regulation which does not itself purport to establish the standard. *See* Restatement (Second) of Torts § 285 (1965). Thus, despite UOSHA's provision prohibiting its use to affect the common law rights, duties, or liabilities of employers, this court can look to UOSHA and OSHA for evidence of industry standards in certain circumstances. *See Figgs v. Bellevue Holding Co.*, 652 A.2d 1084 1091 (Del.Super.Ct.1994); Utah Code Ann. § 35–9–20 (1994) (currently Utah Code Ann. § 34A–6–110 (1997)). The Restatement provides the following guidelines for the adoption of legislative standards:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 286 (1965). UOSHA and OSHA explicitly purport to protect the safety and health of workers at work. Because OSHA standards are so widely known, understood, and followed, they constitute a legitimate source for determining the standard of reasonable care, and we hereby approve of their use. *See* Utah Code Ann. § 34A–6–102 (1997); 29 C.F.R. § 1926.10. The district court properly admitted the regulation to establish a rebuttable presumption of non-defectiveness under Utah Code Ann. § 78–15–6(3).

### III. FOREIGN SAFETY STANDARDS

¶ 19 Slisze next contends that the district court abused its discretion by refusing to admit the testimony of the plaintiff's liability expert regarding the standards of foreign countries that prohibit the manufacture and sale of "contact-trip" nailers. As previously mentioned, questions regarding the relevance of evidence are reviewed for abuse of discretion. *See Hall,* 890 P.2d at 1028. We find that the lower court did not abuse its discretion in prohibiting the testimony, but we reject the grounds on which it made that determination. The district court rejected the foreign standards as inapplicable, establishing a bright-line rule against admitting foreign safety standards. We disagree with the district court's determination that foreign safety standards are always irrelevant, but affirm the exclusion of that evidence in this case on the ground that it was not reliable.

¶ 20 The record reveals that no foreign standards were actually produced and that the expert's testimony only referred generally to the laws of several European countries. No proffer was made of the foreign standards themselves, nor was there any indication that the witness was an expert as to those standards or their bases. Therefore, it was not an abuse of discretion for the court to refuse to admit the testimony.

### IV. PUNITIVE DAMAGES

¶ 21 Finally, due to our holdings above and the jury verdict below, the claim for punitive damages is moot, and the trial court's summary judgment on that question is affirmed.

Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in *Associate Chief Justice DURHAM's* opinion.