*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 53**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

SHAWNNA RAE COPE,
*Appellant,*
*v.*
UTAH VALLEY STATE COLLEGE,
*Appellee.*

No. 20130016
Filed November 21, 2014

On Certiorari to the Utah Court of Appeals

Fourth District, Provo Dep't
The Honorable Samuel D. McVey
No. 060402488

Attorneys:

Terry M. Plant, Stewart B. Harman, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., J. Clifford Petersen, Asst. Att'y Gen.,
Salt Lake City, for appellee

Michael D. Zimmerman, Troy L. Booher, Julie J. Nelson,
Salt Lake City, for Amicus Curiae

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH and JUSTICE LEE join.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1    Shawnna Cope was injured while practicing with the Utah Valley State College (UVSC) ballroom dance team, and sued the state-owned college.[1] The district court dismissed the lawsuit, ruling that the public duty doctrine dictated that UVSC owed no duty of care to Ms. Cope. The court of appeals subsequently held that the

---

[1]    After the accident leading to this appeal, Utah Valley State College changed its name to Utah Valley University. Because the pleadings and the courts below have consistently referred to the institution by its name on the date of the accident, we likewise use UVSC throughout this opinion.

public duty doctrine did not apply to Ms. Cope's lawsuit and reversed the trial court. We granted certiorari.

¶2    Having requested additional briefing from the parties, we take this opportunity to clarify the public duty doctrine. First, we decline to abrogate the doctrine, as several other states have done, and retain the public duty doctrine as part of Utah's common law. Second, we overturn in part *Webb v. University of Utah*, 2005 UT 80, 125 P.3d 906, and hold that the public duty doctrine applies only to the omissions of a governmental actor. The doctrine does not immunize the State from liability for affirmative acts that harm a plaintiff. Third, we clarify that the public duty doctrine is limited to situations where a plaintiff seeks to impose liability for a duty to protect the general public from external harms.

¶3    Applying these principles to this case, we hold that the public duty doctrine does not negate UVSC's duty of care toward student members of a ballroom dance team created and overseen by the college. We therefore reverse the district court, although for reasons different from those expressed by the court of appeals, and remand for further proceedings.

### BACKGROUND

¶4    Ms. Cope was a member of a ballroom dance team at UVSC, a state-owned college. She was also enrolled in a ballroom dance class that awarded her credit for her participation with the team. During a team practice, Ms. Cope was rehearsing a choreographed dance routine that required her partner to lift her to his shoulder as she completed a back flip. When couples on the dance team learn a new lift, spotters are usually provided to catch the female dancer if she falls. On this particular occasion, though, no spotters were requested or provided. Ms. Cope and her partner attempted the lift twice, but they did not properly complete the maneuver. On the first two attempts, her partner lifted Ms. Cope to his right shoulder, which was easier than lifting her across his body to his left shoulder.

¶5    Ms. Cope's partner told the class instructor that he had never been able to successfully perform this particular lift, and the instructor told the couple to try the lift again, this time to the left shoulder. The instructor told Ms. Cope to push off with greater force and told her partner to lift with more power, but did not give further guidance on how to complete the maneuver. The instructor also said that if the couple was unable to perform the maneuver properly, he would have to cut it from the routine. On the third attempt Ms. Cope's partner lost his footing, and she fell. Her partner used his

body to cushion the fall, but Ms. Cope sustained an injury when her head struck her partner's knee.

¶6 Ms. Cope sued UVSC, alleging the college negligently caused her injury. She also alleged UVSC was liable for the class instructor's negligence under the doctrine of respondeat superior. UVSC moved for summary judgment, arguing UVSC owed no duty to protect Ms. Cope from harm because it did not have a special relationship with her. The district court denied the motion and set a trial date. UVSC then renewed its motion for summary judgment, attaching additional evidence that Ms. Cope and her partner had practiced lifting her to the partner's right shoulder prior to the date of the accident.

¶7 The district court granted the renewed motion for summary judgment and dismissed Ms. Cope's lawsuit. Relying upon our analysis of the public duty doctrine in *Webb v. University of Utah*, 2005 UT 80, 125 P.3d 906, the district court ruled that UVSC did not form a special relationship with Ms. Cope, and therefore UVSC owed her no duty of care. The district court reasoned that because Ms. Cope was aware that she was performing a new lift that she and her partner had not successfully completed before, and because the instructor gave her the option of cutting the maneuver from the routine, UVSC did not induce "detrimental reliance creating a greater risk of peril than existed otherwise."

¶8 Ms. Cope appealed, and the court of appeals reversed the district court because it found that the special relationship exception to the public duty doctrine applied to Ms. Cope. *Cope v. Utah Valley State Coll.*, 2012 UT App 319, ¶ 27, 290 P.3d 314. The court of appeals held that "a special relationship is created when (1) a directive is given to a student (2) by a teacher or coach (3) within the scope of the academic enterprise" and found that a special relationship had been formed under the facts of this case. *Id.* ¶ 17.

¶9 This court granted certiorari on the following issue: "Whether the court of appeals erred in its construction and application of the special relationship test articulated by *Webb v. University of Utah*, 2005 UT 80, 125 P.3d 906." After the parties presented oral argument to this court, we issued an order requesting supplemental briefing on the following issues:

> 1. Should the scope and application of the public duty doctrine be limited to public employees with duties to the public as a whole, such as public safety officers?

2. Should the public duty doctrine be applied to affirmative acts of government employees or should the doctrine be limited to omissions?

3. Should the public duty doctrine be retained in our common law?

## STANDARD OF REVIEW

¶10 In this appeal, we review the court of appeals' determination that the district court erred in ruling that neither UVSC nor its employee owed an enforceable duty of care to Ms. Cope. Whether a defendant owes a duty of care to a plaintiff is question of law. *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228. We therefore review de novo a lower court's determination of whether a duty exists. *Slisze v. Stanley-Bostitch*, 1999 UT 20, ¶ 9, 979 P.2d 317.

## ANALYSIS

¶11 In order to prevail in an action for negligence, a plaintiff must prove that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused (4) the plaintiff to suffer legally compensable damages. *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228. The first element of a negligence claim, a duty of care, "may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 19, 215 P.3d 152 (internal quotation marks omitted). "A court's conclusion that duty does or does not exist is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection." *Webb v. Univ. of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (alteration in original) (internal quotation marks omitted).

¶12 When determining whether a government actor owes a duty of care to a plaintiff, we have held that courts must evaluate whether the public duty doctrine dictates that an individual may not enforce a public duty in tort. Under this doctrine, "a plaintiff cannot recover for the breach of a duty owed to the general public, but must show that a duty is owed to him or her as an individual." *Madsen v. Borthick*, 850 P.2d 442, 444 (Utah 1993); *accord Ferree v. State*, 784 P.2d 149, 151 (Utah 1989) ("For a governmental agency and its agents to be liable for negligently caused injury suffered by a member of the public, the plaintiff must show a breach of a duty owed him as an individual, not merely the breach of an obligation owed to the

general public at large by the governmental official.”). In other words, “a duty to all is a duty to none.” *Cannon v. Univ. of Utah*, 866 P.2d 586, 588 (Utah Ct. App. 1993) (internal quotation marks omitted). The public duty doctrine is based on the policy determination that when a governmental entity assumes a duty to protect the general public from harms such as criminal activity, holding the entity liable for a breach of this duty would cause municipalities to be “mired hopelessly in civil lawsuits . . . for every infraction of the law.” *Prosser v. Kennedy Enters., Inc.*, 179 P.3d 1178, 1183 (Mont. 2008). If a plaintiff’s negligence claim is based upon a public duty, courts will recognize the duty only if the plaintiff establishes a special relationship that imposes a specific duty of care toward the plaintiff as an individual that is distinguishable from a public duty owed to the general public. *Madsen*, 850 P.2d at 444.

¶13 In deciding whether the public duty doctrine prevents Ms. Cope from establishing the necessary duty element of her negligence cause of action, we first examine the issues outlined for supplemental briefing: (1) whether the public duty doctrine should be retained, (2) whether the doctrine applies to both acts and omissions, and (3) whether the doctrine is limited to employees with duties to the public at large. Because we hold that the public duty doctrine should be retained in our common law, we finally examine whether the doctrine bars Ms. Cope’s lawsuit.

I. VALIDITY OF THE PUBLIC DUTY DOCTRINE IN UTAH

¶14 The public duty doctrine is recognized in most jurisdictions. *See Beaudrie v. Henderson*, 631 N.W.2d 308, 311 (Mich. 2001). By our count, however, twelve state supreme courts have explicitly rejected or abandoned the doctrine.[2] These courts generally have justified the abandonment of the public duty doctrine by reasoning that it was a

---

[2] *Adams v. State*, 555 P.2d 235, 241–42 (Alaska 1976); *Coffey v. City of Milwaukee*, 247 N.W.2d 132, 137–39 (Wis. 1976); *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1015 (Fla. 1979); *Brennen v. City of Eugene*, 591 P.2d 719, 724–25 (Or. 1979); *Ryan v. State*, 656 P.2d 597, 599 (Ariz. 1982); *Schear v. Bd. of Cnty. Comm'rs*, 687 P.2d 728, 730–31 (N.M. 1984); *Maple v. City of Omaha*, 384 N.W.2d 254, 260 (Neb. 1986); *Leake v. Cain*, 720 P.2d 152, 160 (Colo. 1986); *DeWald v. State*, 719 P.2d 643, 653 (Wyo. 1986); *Jean W. v. Commonwealth*, 610 N.E.2d 305, 312–13 (Mass. 1993); *Doucette v. Town of Bristol*, 635 A.2d 1387, 1390 (N.H. 1993); *Ficek v. Morken*, 685 N.W.2d 98, 107–08 (N.D. 2004); *see also Arthurs ex rel. Estate of Munn v. Aiken Cnty.*, 551 S.E.2d 579, 585 (S.C. 2001) (retaining the public duty doctrine when applied to statutory duties but rejecting the doctrine when applied to common-law duties).

form of governmental immunity and was therefore inconsistent with their state legislatures' abrogation of absolute sovereign immunity. *E.g., Doucette v. Town of Bristol*, 635 A.2d 1387, 1390 (N.H. 1993) ("[T]he public duty rule impermissibly conflicts with the abrogation of common law municipal immunity . . . ."); *Adams v. State*, 555 P.2d 235, 241 (Alaska 1976) ("[W]e consider that the [public duty] doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine.").

¶15 We disagree with the reasoning of the courts that have abandoned the public duty doctrine. The public duty doctrine is not a subsidiary branch of sovereign immunity, as asserted by some courts. *See Adams*, 555 P.2d at 241. Rather, the doctrine informs a court's determination of whether a government actor owes a common law duty of care to a plaintiff. *Day v. State*, 1999 UT 46, ¶ 10, 980 P.2d 1171 (treating the public duty doctrine and sovereign immunity as separate and distinct legal principles); *Higgins v. Salt Lake Cnty.*, 855 P.2d 231, 235 (Utah 1993) (same). "Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." *Ferree v. State*, 784 P.2d 149, 153 (Utah 1989) (internal quotation marks omitted); *see also Turner v. United States*, 248 U.S. 354, 358 (1919) ("The fundamental obstacle to recover [under the public duty doctrine] is not the immunity of a sovereign to suit, but the lack of a substantive right to recover the damages resulting from failure of a government or its officers to keep the peace.").

¶16 We therefore see no reason to deviate from our prior holding that

> the legislature's abrogation of absolute sovereign immunity does not lead to the conclusion that the public duty doctrine has also been abrogated. Legislative recognition of a right to recover from one who has previously been immune from liability for tortious acts cannot logically be read as an elimination of the requirement that before one can recover damages from another, a tort must be proven. There must still be proof of a duty owed to the one claiming injury and a breach of that duty.

*Rollins v. Petersen*, 813 P.2d 1156, 1162 n.3 (Utah 1991); *see also Arthurs ex rel. Estate of Munn v. Aiken Cnty.*, 551 S.E.2d 579, 583 (S.C. 2001)

("Since the public duty rule is not grounded in immunity but rather in duty, we hold it has not been affected by [the legislative abrogation of absolute sovereign immunity]." (Citations omitted)). In fact, this court did not adopt the public duty doctrine until several years after the legislature first limited Utah's sovereign immunity in 1965 by passing the Governmental Immunity Act. 1965 Utah Laws 390–97; *Obray v. Malmberg*, 484 P.2d 160, 162 (Utah 1971). Thus, Utah's abrogation of absolute sovereign immunity could not impliedly extinguish a doctrine not yet recognized by this court.[3]

¶17 Stare decisis bolsters our decision to retain the public duty doctrine. This court has consistently applied the doctrine for over forty years.[4] Presumably, government officials and employees have relied upon this long-standing legal principle in performing their public duties, and we should not disrupt the status quo without good cause to do so. *See Carter v. Lehi City*, 2012 UT 2, ¶ 6, 269 P.3d 141. As noted above, we find no compelling legal rationale for abandoning the public duty doctrine, and therefore follow our precedent recognizing it.

¶18 Having affirmed the continued validity of the public duty doctrine in Utah, we next examine its proper scope.

## II. APPLICABILITY OF THE PUBLIC DUTY DOCTRINE TO ACTS AND OMISSIONS

¶19 In *Webb v. University of Utah*, we held that the public duty doctrine applies to both acts and omissions. 2005 UT 80, ¶ 15, 125 P.3d 906. Having invited the parties to brief the continued viability of this principle, we consider whether to modify this holding. We

---

[3] After briefing and oral argument in this case, the legislature enacted a law that appears to be a statutory endorsement of the special relationship exception to the public duty doctrine: "A general duty that a governmental entity owes to the public does not create a specific duty to an individual member of the public, unless there is a special relationship between the governmental entity and the individual member of the public." S.B. 250, 60th Leg., Gen. Sess. [Utah 2014] (modifying Utah Code section 63G-7-202). Because this apparent statutory expression of the public duty doctrine is not retroactive, it does not affect the disposition of this case. *See State v. Clark*, 2011 UT 23, ¶ 11, 251 P.3d 829. We therefore leave the interpretation of this statute for another day.

[4] *Webb v. Univ. of Utah*, 2005 UT 80, ¶ 16, 125 P.3d 906; *Day*, 1999 UT 46, ¶ 11; *Rocky Mountain Thrift Stores Inc. v. Salt Lake City Corp.*, 887 P.2d 848, 852 (Utah 1994); *Madsen v. Borthick*, 850 P.2d 442, 444 (Utah 1993); *Ferree*, 784 P.2d at 151–52; *Christenson v. Hayward*, 694 P.2d 612, 612–13 (Utah 1984); *Obray*, 484 P.2d at 161–62.

"may not do so lightly." *State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994). This court should overturn its own precedent only "where the decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable." *Id.* (internal quotation marks omitted). In addition, we consider whether overturning a precedent would undermine the public's substantial reliance upon an established legal principle. As we have noted, "people should know what their legal rights are as defined by judicial precedent, and having conducted their affairs in reliance on such rights, ought not to have them swept away by judicial fiat." *Carter v. Lehi City*, 2012 UT 2, ¶ 6, 269 P.3d 141 (internal quotation marks omitted).

¶ 20 In deciding whether *Webb* was clearly erroneous, we first examine the legal support for our conclusions in that opinion to determine its precedential weight. *Menzies*, 889 P.2d at 399 (overturning the holding of an opinion because it was "not the most weighty of precedents "). We then look to the origins and purpose of the public duty doctrine to determine whether our conclusion in *Webb*—that the doctrine extends to affirmative acts—is clearly erroneous. Finally, we consider whether substantial reliance interests in the *Webb* holding counsel against overturning our precedent.

¶21 *Webb* states that "governmental actors are not accountable for their affirmative acts unless a special relationship is present." 2005 UT 80, ¶ 16. In support of this declaration, we cited *Day v. State*, where we held that a general public duty "does not impose a specific duty of due care on the government with respect to individuals who may be harmed by governmental *action or inaction*, unless there is" a special relationship. 1999 UT 46, ¶ 12, 980 P.2d 1171 (emphasis added). But at this point in tracing the origins of our holding in *Webb*, the trail goes cold. The authorities cited in *Day* do not discuss the extension of the public duty doctrine to affirmative acts that cause harm. *See id.* Moreover, the *Day* court explicitly recognized in a footnote that several courts have held that the public duty rule does *not* apply to affirmative acts. *Id.* ¶ 13 n.2 ("Some courts have also recognized an exception to the public duty rule where there is an affirmative act by the officer causing injury." (internal quotation marks omitted)). So, not only is *Day*'s statement that "governmental action or inaction" is covered by the public duty doctrine of uncertain origin and devoid of analysis, but the opinion also points to authority that contradicts this conclusion. Thus, *Webb*'s conclusion that the public duty doctrine applies to affirmative acts apparently builds on the shaky foundation of our unsubstantiated stray dicta in *Day*.

¶22 Additionally, the clear preponderance of caselaw contradicts our assertion in *Webb*. The origins of the public duty doctrine can be traced back to *South v. Maryland*, 59 U.S. (18 How.) 396 (1855). In that case, the plaintiff asserted that "certain evil[-]disposed persons came about him, hindered and prevented him, threatened his life, with force of arms demanded of him a large sum of money, and imprisoned and detained him for the space of four days, and until he paid them the sum of $2,500 for his enlargement." *Id.* at 401 (internal quotation marks omitted). The plaintiff requested protection from the local sheriff, who was apparently present for at least a portion of the ordeal, but the sheriff refused to assist him. *Id.* The plaintiff then sued the sheriff, alleging the sheriff had neglected to execute the duty imposed by his position to keep the peace. *Id.* The Supreme Court held, however, that the sheriff could not be held liable for breach of his public duties as conservator of the peace "by those who have suffered injury to their property or persons through the violence of mobs, riots, or insurrections." *Id.* at 403. The Court noted that because the plaintiff had not alleged that his individual rights and privileges had "been restrained or hindered by the malicious *act* of the sheriff," the plaintiff had not pled a viable cause of action against the sheriff. *Id.* (emphasis added). Thus, the Supreme Court established that a public official could not be held liable for a failure to perform a public duty, but suggested that the official could be liable for harmful acts. *See also Turner v. United States*, 248 U.S. 354, 357–58 (1919) (tribal officials not liable for failing to prevent individuals from destroying a fence).

¶23 The great weight of state law supports the distinction between omissions and affirmative acts established by the Supreme Court. Most other jurisdictions that have considered the issue have held that the public duty doctrine shields a governmental actor only from liability for omissions. *See, e.g., Commonwealth v. Burns*, 639 S.E.2d 276, 279 (Va. 2007) (declining to extend the public duty doctrine to include the affirmative acts of a road construction crew in creating a dangerous condition on a public highway); *Gleason v. Peters*, 568 N.W.2d 482, 487 (S.D. 1997) (holding that a police department had no duty to stop a party because it was "undisputed that no affirmative action by the officers contributed to, increased, or changed the risk which would have otherwise existed" (internal quotation marks omitted)); *Willis v. Warren Twp. Fire Dep't*, 672 N.E.2d 484, 487 (Ind. Ct. App. 1996) ("The [public duty] test . . . is limited in application to cases in which a government's promise and subsequent failure to act causes the plaintiff's losses."); *Coty v. Washoe Cnty.*, 839 P.2d 97, 99 (Nev. 1992) (public duty doctrine does

not apply "where a public officer's conduct '*affirmatively causes*' harm to an individual"); *Dauffenbach v. City of Wichita*, 667 P.2d 380, 385 (Kan. 1983) (public duty doctrine does not apply "where there is an affirmative act by the officer causing injury"); *Jahnke v. Inc. City of Des Moines*, 191 N.W.2d 780, 785 (Iowa 1971) ("[T]he general rule is that a municipality or its employees is not liable for failure to supply general police or fire protection."); *Massengill v. Yuma Cnty.*, 456 P.2d 376, 379 (Ariz. 1969) ("The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its *nonperformance*." (emphasis added) (internal quotation marks omitted)), *overruled on other grounds by Ryan v. State*, 656 P.2d 597 (Ariz. 1982) (abrogating the public duty doctrine); *Bacon v. Town of Rocky Hill*, 11 A.2d 399, 402 (Conn. 1940) (governmental entity may be held liable for affirmatively creating a dangerous condition on a public highway, but not for omissions in failing to remedy a dangerous condition it did not create).

¶24 Utah caselaw prior to *Webb* was in line with this prevailing view, applying the public duty doctrine to shield governmental actors from liability only for negligent omissions. *Rocky Mountain Thrift Stores Inc. v. Salt Lake City Corp.*, 887 P.2d 848, 852 (Utah 1994) (city not liable for alleged failure to adequately ameliorate the negative effects of a flood); *Madsen v. Borthick*, 850 P.2d 442, 444–45 (Utah 1993) (state agency not liable for alleged failure to properly regulate a financial institution that failed); *Ferree v. State*, 784 P.2d 149, 151–52 (Utah 1989) (state corrections officials had no duty to prevent an inmate on weekend release from harming unidentified third parties); *Christenson v. Hayward*, 694 P.2d 612, 612–13 (Utah 1984) (police officer did not have a duty to prevent a drunk motorcyclist from driving and harming himself); *Obray v. Malmberg*, 484 P.2d 160, 161–62 (Utah 1971) (sheriff not liable for an alleged failure to properly investigate a crime). In contrast, we have declined to apply the public duty doctrine where an officer's act of engaging in a high-speed vehicle pursuit affirmatively "created an immediate, obvious, and significant threat of serious harm to other users of the highway." *Day*, 1999 UT 46, ¶ 24. The distinction between these two lines of Utah caselaw lies in the source of the harm to the plaintiff. Where the harm is directly caused by a third party, the plaintiff's own negligence, or an outside force such as a natural disaster, the government is not liable for its failure to rescue the plaintiff from the

external harm.[5] Where the affirmative acts of a public employee actually cause the harm, however, the public duty doctrine does not apply. *See Fried v. Archer*, 775 A.2d 430, 444 (Md. Ct. Spec. App. 2001) (The public duty doctrine protects police dispatchers "because such dispatchers do not create the plaintiff's peril. The government driver who injures a plaintiff through his negligence is liable because he created the peril, not because he failed to rescue the plaintiff from it."), *aff'd sub nom. Muthukumarana v. Montgomery Cnty.*, 805 A.2d 372 (Md. 2002); *Huey v. Town of Cicero*, 243 N.E.2d 214, 216 (Ill. 1968) ("[T]he general rule is that a municipality or its employees is not liable for failure to supply general police or fire protection. This rule has been maintained in the face of decisions holding municipalities liable for affirmative negligent or wilful acts by their employees." (Citations omitted)).

¶25 Moreover, limiting the public duty doctrine to omissions comports with the special relationship exception to the doctrine. Under this exception, a government defendant may be held liable for the violation of what would otherwise be a public duty if the defendant formed a special relationship with the plaintiff that gave rise to a specific duty of care toward the plaintiff as an individual. *Madsen*, 850 P.2d at 444. This special relationship exception makes sense only in the context of omissions. For instance, if a police officer affirmatively acts by negligently discharging his weapon and wounds a child ten blocks away, it would be absurd to inquire whether the officer had a special relationship with the innocent victim. Imposing liability if the officer happened to have a special relationship with the child, but disallowing recovery if no such relationship existed simply would not make sense. The inherent absurdity of applying a special relationship exception to the affirmative acts of public safety employees stems from the fact that the foreseeability of the harm, rather than the nature of the tortfeasor's relationship to the plaintiff, limits liability for affirmative

---

[5] The public duty doctrine is not confined, however, to situations where a public employee takes no action whatsoever. "[A] failure to perform [a public duty], *or an inadequate or erroneous performance,* must be a public, not an individual injury . . . ." *White v. Beasley*, 552 N.W.2d 1, 3 (Mich. 1996) (emphasis added) (internal quotation marks omitted). In *Rocky Mountain Thrift Stores*, for example, Salt Lake City took various measures to combat extreme flooding. 887 P.2d at 851. The public duty doctrine, however, shielded the city from liability for the plaintiff's claims that these efforts were inadequate. *Id.* at 852. In other words, governmental actors are also not liable for a defective effort to perform a public duty to ameliorate an externally caused harm.

acts causing harm. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶¶ 19, 27–28, 275 P.3d 228; *Furkovich v. Bingham Coal & Lumber Co.*, 143 P. 121, 124 (Utah 1914). In contrast, the special relationship exception to the public duty doctrine serves a similar function to the tort principle that a private individual generally has no duty to act to rescue another from harm unless there is a special relationship that creates such a duty. *See B.R.*, 2012 UT 11, ¶¶ 7–19; Restatement (Third) of Torts: Phys. & Emot. Harm §§ 37, 40 (2012). For both government actors and private individuals, the special relationship exception permits liability for omissions where a special relationship has been formed as an exception to the primary rule that no duty to act exists.[6]

¶26 Finally, any reliance interests in *Webb* are not substantial enough to prevent this court from overruling it. *See Carter*, 2012 UT 2, ¶ 6. Unlike the public duty doctrine itself, which we have consistently applied over the last forty years, *supra* ¶ 17, our holding in *Webb* is an isolated application of that doctrine, *supra* ¶¶ 21, 23. Because *Webb* has not become a well-entrenched or frequently applied precedent, the public's reliance upon *Webb* is not as strong. Moreover, our holding in *Webb* involved the common law, which is subject to continuing evolution and refinement and may not engender the same sort of reliance interest as an interpretation of a statute, for example.

¶27 In summary, the genesis of the public duty doctrine, the great weight of foreign authority, and our prior caselaw all limit the doctrine's application to omissions. This, coupled with the dubious support for our holding in *Webb*, leads us to the conclusion that we clearly erred by expanding the doctrine to encompass affirmative acts. We therefore overrule *Webb* on this point and hold that the

---

[6] By excepting from liability the public duties certain government employees perform by virtue of their employment, the public duty doctrine places public safety employees on the same footing as private actors. Neither may be subjected to tort liability for a failure to rescue another from harm absent a special relationship. Conceptually, it appears that there is little difference between the special relationship exception applied to a private individual's failure to rescue another from harm and the special relationship exception applied to a public employee's failure to perform a public duty to safeguard the general public. But because the degree to which the special relationship exception applied to the omissions of private individuals and the special relationship exception applied to the omissions of public safety officials is not a question we need resolve in this appeal, we reserve it for another day.

public duty doctrine does not apply to claims of affirmative misconduct.

## III. SCOPE OF DUTIES PROTECTED BY THE PUBLIC DUTY DOCTRINE

¶28 We now turn to the question of which types of duties are "public duties" that may not be enforced in a lawsuit against a government agency or public employee. Before we do so, though, we first discuss the proper relationship between the public duty doctrine and the special relationship exception.

¶29 In *Webb v. University of Utah*, we stated that "[w]ithout a special relationship, the University owed no duty to [the plaintiff]." 2005 UT 80, ¶ 16, 125 P.3d 906. Understandably relying upon this perhaps inartful declaration, both the district court and the court of appeals exclusively focused on the question of whether UVSC had formed a special relationship with Ms. Cope. Under this construction of the public duty doctrine, the primary question is whether a special relationship has been established. Examining the special relationship exception first, however, distorts the public duty doctrine. In essence, the doctrine becomes a "special relationship doctrine," with governmental actors owing a duty of care only where they have reached out to form a special relationship with members of the public.

¶30 Instead, courts must first determine whether a plaintiff's theory of liability rests upon a public duty. If a plaintiff's claim is based on the defendant's failure to adequately discharge a public duty, a presumption arises that this duty may not be a basis for liability in a lawsuit. Only then should the court examine whether a special relationship exists that would create an exception to the general rule that public duties may not provide a basis for liability.

¶31 We have defined a public duty as "an obligation owed to the general public at large." *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). The most common examples of public duties include (1) the duty a police officer assumes to protect the public from harm caused by the criminal acts of third parties and (2) the duty of a firefighter to protect the public from fires or natural disasters. *See, e.g., Powell v. District of Columbia*, 602 A.2d 1123, 1128 (D.C. 1992) ("[T]he [public duty] doctrine applies to law enforcement services and services akin to police and fire protection . . . ."); *Cuffy v. City of New York*, 505 N.E.2d 937, 939 (N.Y. 1987) ("As a general rule, a municipality may not be held liable for injuries resulting from a simple failure to provide police protection."); John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory*

*that Only General, Not Particular, Duty Was Owed Under Circumstances,*
38 A.L.R.4TH 1194, § 2 (1985) ("Under the [public duty] doctrine a
governmental entity is not liable for injury to a citizen where liability
is alleged on the ground that the governmental entity owes a duty
to the public in general, as in the case of police or fire protection.").
Other examples of public duties include: the duty to regulate
financial institutions to protect depositors, *Madsen v. Borthick*, 850
P.2d 442, 444 (Utah 1993); the duty to protect the public from natural
disasters, *Rocky Mountain Thrift Stores Inc. v. Salt Lake City Corp.*, 887
P.2d 848, 852 (Utah 1994); the duty of prison officials or parole
boards to consider public safety when granting furloughs or parole
to prisoners, *Ferree*, 784 P.2d at 151–52; the duty of government
safety inspectors to guard the public from unsafe conditions, *Hage
v. Stade*, 304 N.W.2d 283, 287 (Minn. 1981) (fire safety inspectors);
and the duty to avoid issuing a license to an unsafe motorist or an
incompetent physician, *Johnson v. Indian River Sch. Dist.*, 723 A.2d
1200, 1203 (Del. Super. Ct. 1998) (driving license) *aff'd*, 723 A.2d 397
(Del. 1998); *Nelson v. State*, 195 P.3d 293, 303 (Mont. 2008) (medical
license).

¶32 These examples of public duties raise the question of how
broad a duty must be in order to qualify as "an obligation owed to
the general public at large." *Ferree*, 784 P.2d at 151. More specifically,
this case raises the question of how expansive the obligations of an
employee of a public college must be to qualify as a public duty. A
public duty need not extend to the entire world. The duties of
firefighters and police officers, which are clearly public obligations,
end at the border of the city or county that they serve. And, of
course, the student bodies of Utah's public institutions of higher
learning rival or exceed the population of many small cities and
towns throughout the state. Thus, by analogy to the example of
police officers and firefighters, a duty owed to a college or university
population as a whole may be sufficiently broad to qualify as a
public duty. For example, a university police department may
assume an obligation to secure the safety of students, faculty, and
visitors to the campus that would be just as extensive as the duties
assumed by a small-town sheriff.

## IV. APPLICATION OF THE PUBLIC DUTY DOCTRINE TO BALLROOM DANCE INSTRUCTION AT A PUBLIC COLLEGE

¶33 We now apply the principles laid out in this opinion to the
question presented in this appeal: whether the public duty doctrine
bars Ms. Cope's lawsuit against UVSC for injuries she sustained
while practicing for the college's ballroom dance team. In other

words, did Ms. Cope base her negligence claim upon an allegation that UVSC neglected to perform a public duty that it owed to the general public?

¶34  First, we examine whether Ms. Cope's lawsuit is founded upon an allegation that UVSC's affirmative actions caused her injuries, or whether she rests her lawsuit on UVSC's omissions in failing to perform a public duty. The public duty doctrine would not hinder the former theory of liability, but could bar a lawsuit based on the latter premise. The parties have emphasized different aspects of Ms. Cope's claims in an effort to characterize her lawsuit as being based upon either an act or an omission. UVSC asserts that Ms. Cope's lawsuit is properly viewed as a claim that the college failed to provide spotters that could have prevented her injury. Ms. Cope, on the other hand, contends that UVSC's dance instructor affirmatively directed her and her partner to perform the new maneuver without spotters, which caused her injury.

¶35  Resolution of the question whether Ms. Cope's lawsuit is based upon an act or an omission, however, does not depend upon the semantic framing of her negligence claim as either an allegation that UVSC failed to provide spotters or an allegation that UVSC affirmatively directed Ms. Cope to perform the dance move without spotters. Affirmative acts include "active misconduct working positive injury to others," while omissions are defined as "passive inaction, [i.e.,] a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 7, 275 P.3d 228 (internal quotation marks omitted). Active misfeasance, however, is not confined to situations where an affirmative act directly causes harm to the plaintiff. As Judge Cardozo noted:

> The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all. . . . If conduct has gone forward to such a stage that [inaction] would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward. . . . The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good.

*H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 898 (N.Y. 1928). Judge Cardozo noted that examples of situations where actions had advanced to a stage where inaction would commonly result in injury include: (1) a surgeon who fails to sterilize instruments, causing an infection; (2) an engineer who fails to shut off steam; or (3) an automobile manufacturer that neglects to adequately inspect an automobile for defects before selling it to a consumer. *Id.* In each of these examples, the defendants could be held liable for misfeasance because they had affirmatively created conditions that gave rise to a duty to act in order to prevent harm.

¶36   Ms. Cope alleged facts that would, at minimum, lead to a similar duty to act. UVSC created, funded, and supervised the ballroom dance team. The college also gave students course credit for team participation. UVSC's actions in creating and overseeing the ballroom dance team had advanced to a stage where it had a duty to act in a reasonable manner to prevent injuries caused by participation with the dance team. Just as a surgeon who undertakes an operation also assumes a duty to act to sterilize the surgical instruments, once UVSC created the ballroom dance team and used tuition revenue to hire an instructor, the college "launched a force or instrument of [potential] harm." *See id*. Having done so, UVSC assumed a duty to act reasonably when providing dance instruction.

¶37   Thus, even if we were to characterize Ms. Cope's claim as an allegation that UVSC failed to provide spotters, this is not an "omission" within the tort-law definition of this term. Examples of omissions for which a government entity may not be held liable include the failure to provide police or fire protection and neglecting to protect the public from harm caused by a natural disaster. *See, e.g., Rocky Mountain Thrift Stores Inc. v. Salt Lake City Corp.*, 887 P.2d 848, 852 (Utah 1994); *Jahnke v. Inc. City of Des Moines*, 191 N.W.2d 780, 785 (Iowa 1971). In effect, a policeman normally may not be held liable for failing to prevent the harmful criminal acts of a third party, while a firefighter may not be sued for neglecting to dowse a fire he did not set. In each of these examples, an omission in the form of a failure to perform a public duty to protect or rescue the general population "from harm not created by any wrongful act of the defendant" may not be enforced through a lawsuit for damages. *See B.R.*, 2012 UT 11, ¶ 7 (internal quotation marks omitted). Ms. Cope's claim is dissimilar, however, in that she does not allege that UVSC and her dance instructor failed to rescue her from an external threat. At minimum, Ms. Cope asserts that UVSC actively created the conditions that led to her injury by creating the ballroom dance team and then failing to provide safe instruction. Because Ms. Cope can,

at least in theory, trace her harm back to an affirmative act by UVSC, the public duty doctrine does not bar her claim.

¶38 We also hold that the public duty doctrine does not apply because ballroom dance instruction is not a public duty "owed to the general public at large"—or, in this case, UVSC's student body and faculty. *See Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). Neither UVSC nor its ballroom dance instructor assumed a duty to provide dance instruction to the entire college. The scope of UVSC's dance instruction duties is not the only impediment to its claim to public duty doctrine protections, though. The nature of a duty to provide safe dance instruction is fundamentally different from recognized public duties such as providing police and fire protection, safeguarding the public from natural disasters, considering public safety when granting parole to prisoners, regulating financial institutions to protect depositors, and licensing motorists and doctors to promote safety. *See supra* ¶ 31. Each of these well-established public duties involve obligations assumed by governmental entities to protect the general public from external harms. Ballroom dance instruction, however, is not a service that protects the public from harm. Thus, Ms. Cope's theory of liability does not rely upon a public duty owed to the general public.

¶39 We therefore hold that Ms. Cope's lawsuit is not based on a public duty. Consequently, the public duty doctrine does not bar her negligence claim, and we need not consider the special relationship exception to this doctrine. We reverse the district court's order dismissing Ms. Cope's lawsuit and remand for further proceedings consistent with this opinion.[7]

---

[7] UVSC argued in its opening brief that Utah should follow caselaw from other jurisdictions holding that a coach's duty of care is limited to a duty "not to increase the risk inherent in learning, practicing, or performing in the sport." *Kahn v. E. Side Union High Sch. Dist.*, 75 P.3d 30, 39 (Cal. 2003). This principle adopted by other courts, however, was not discussed in the district court's order or the court of appeals' opinion, and we did not grant certiorari or request additional briefing on this issue. We therefore do not address this issue because it lies outside the scope of the issue defined in our order granting certiorari or the issues described in our request for additional briefing. *See DeBry v. Noble*, 889 P.2d 428, 443 (Utah 1995) ("Issues . . . not included in the order granting certiorari or fairly encompassed within such issues, are not properly before this Court on the merits.").