**2017 UT App 65**

## THE UTAH COURT OF APPEALS

SAMANTHA MILLER,
Appellant,
*v.*
WEST VALLEY CITY,
Appellee.

Opinion
No. 20150449-CA
Filed April 13, 2017

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 140903126

Ryan J. Schriever, Attorney for Appellant

J. Eric Bunderson, Claire Gillmor, Brandon M. Hill,
and Adrienne H. Bossi, Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

TOOMEY, Judge:

¶1     This appeal involves an accident in a West Valley City
(WVC) swimming pool during which appellant Samantha Miller
was injured. Miller sued WVC, and the district court dismissed
the case. We must decide whether the court properly granted
WVC's rule 12(b)(6) motion to dismiss for failure to state a claim
upon which relief may be granted. We conclude that it did and
therefore affirm.

BACKGROUND[1]

¶2    WVC owns and operates West Valley City Family Fitness Center. In May 2013, Miller was swimming laps in the fitness center pool when some teenage girls came into her lane and "interfere[d] with her laps." Miller alleged the "lifeguard did not take adequate action to remove the girls from the pool." While Miller was doing the backstroke she ran into one of the teenagers, "became disoriented . . . and collided with the [pool] wall." Miller "sustained a closed-head injury, neck injuries and other bodily injuries."

¶3    Miller sued WVC asserting premises liability and negligence. She first contended she was an invitee to the fitness center and WVC had "a duty to keep the premises free from hazardous conditions." She further argued that WVC, through its lifeguard employee, "should have known that there was an unreasonably dangerous condition in [her] swimming lane" that she would be unable to see while doing the backstroke and because of this, the condition "was hidden to [her]." She argued WVC owed a duty to warn her of the "hidden or latent hazardous conditions."

¶4    Second, in support of her negligence claim, Miller contended that WVC "undertook an obligation to monitor the swimming lanes" at the fitness center "to keep them clear of hazards for people swimming"; WVC "should have recognized it was necessary for the protection of others to maintain the swimming lanes free of hazards"; WVC "failed to exercise

---

1. "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." *Koerber v. Mismash*, 2013 UT App 266, ¶ 3, 315 P.3d 1053 (citation and internal quotation marks omitted).

reasonable care," which "increased the risk of harm"; Miller relied on WVC "to maintain the swimming lanes free of hazards"; and WVC's failure to exercise reasonable care was the proximate cause of her injuries.

¶5 WVC filed a motion to dismiss. It asserted Miller's suit should be dismissed for lack of jurisdiction under rule 12(b)(1) of the Utah Rules of Civil Procedure because Miller failed to file a bond as required by section 63G-7-601(2) of the Utah Code. Further, WVC argued Miller's complaint "should be dismissed under Utah Rule of Civil Procedure 12(b)(6)" for failure to "state any claim under which she could be entitled to relief." Miller subsequently filed a bond and cured the jurisdictional defect.

¶6 WVC's motion to dismiss argued that Miller's complaint failed "to establish a waiver of governmental immunity" and should be dismissed as a matter of law.[2] Specifically, WVC

---

2. Typically, "[i]mmunity is an affirmative defense which must be proved by the defendant." *Van de Grift v. State*, 2013 UT 11, ¶ 23, 299 P.3d 1043 (citation and internal quotation marks omitted). But in some cases, "the existence of the affirmative defense may appear within the complaint itself." *Id.* (citation and internal quotation marks omitted). Though Miller did not raise this issue on appeal, our analysis would be the same had it been raised. Miller's complaint alleged a teenage girl in her swim lane was a "hazardous condition." This is sufficient to show that Miller did not qualify for the "defect or dangerous condition" exception to immunity. *See infra* ¶¶ 14–22. As for Miller's negligence claim, because we determine that WVC did not owe a duty to Miller, we need not decide whether WVC was entitled to governmental immunity. *See Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 14, 356 P.3d 1172 ("In negligence cases involving a defense of governmental immunity, we first determine whether the defendant owed a duty of due care to the plaintiff before deciding whether the defendant is entitled to the affirmative

(continued…)

argued Miller did not properly plead that immunity was waived due to a "defective or dangerous condition of a public building . . . or other public improvement" as allowed by the Governmental Immunity Act of Utah (the GIA). *See* Utah Code Ann. § 63G-7-301(3)(a)(ii) (LexisNexis 2011).[3] That is, Miller did not allege that the defective and dangerous condition was related to the structures of "the building, the pool, [or] the sides of the pool." Rather, she claimed the dangerous condition was the teenager in her swimming lane, but did not show how the teenager "could be a dangerous condition sufficient to support a cause of action for premises liability." WVC argued the "plain language of the statute requires that there be a defect in the *physical condition of the improvement* in order for [WVC] to be liable." (Emphasis added.) WVC also argued that even if Miller could establish "that a young girl in a swimming pool can constitute a dangerous or defective condition of a public building," WVC would still be immune because immunity is not waived if the injury results from a latent dangerous or defective condition, and Miller herself characterized the condition as "hidden or latent" in her complaint.[4] *See id.* § 63G-7-301(3)(b).

---

(…continued)
defense of governmental immunity." (citation and internal quotation marks omitted)).

3. Because Miller's accident occurred in 2013, we refer to the version of the statute that was in effect at that time. *See State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829 ("[I]f a law regulates a breach of contract or a tort, we apply the law as it exists when the alleged breach or tort occurs—i.e., the law that exists at the time of the event giving rise to a cause of action.").

4. Miller's complaint alleged the teenager's presence was a "hazardous condition," "[t]he hazard was hidden," and "WVC owed [her] a duty to warn of hidden or latent hazardous conditions." But in her opposition to WVC's motion to dismiss,

(continued…)

¶7 WVC argued Miller's negligence claim failed because WVC owed Miller no duty of care, in that Miller based her claim on section 323 of the Restatement (Second) of Torts but failed to allege facts sufficient to satisfy the requirements of that section. WVC also argued that because Miller's complaint alleged a lifeguard's omission caused her injury, the public duty doctrine applied, and therefore WVC owed no duty of care to Miller. Finally, WVC noted that Miller had not established there was a special relationship between herself and WVC and therefore could not demonstrate an exception to the public duty doctrine.

¶8 The district court agreed. As to the premises liability claim, it determined the plain language of section 63G-7-301(3)(a)(ii) required that liability be premised upon a defect in "the structure or building itself" and Miller had failed to plead or demonstrate this. In addition, the court determined that Miller had not "alleged a latent condition" because "the facts alleged in the complaint make clear that the 'defect' complained of, the teenage girl in the swimming lane, [was] open and obvious," and Miller was aware of the condition and notified the lifeguard.[5]

---

(…continued)

Miller argued "the condition was not latent" because she had informed the lifeguard of the obstruction and "a reasonably careful inspection . . . would have revealed the dangerous condition." Miller distinguished between what was hidden to her and what was "hidden or latent" to WVC, but because we conclude the condition was not a "dangerous or defective condition of a public building" under Utah Code section 63G-7-301(3)(a), this distinction is ultimately immaterial. *See infra* ¶ 8 n.5.

5. The district court concluded that even if the presence of a teenager in the swimming lane were considered a defect, the defect would "result in a waiver of immunity only if it were a *latent* defect." (Emphasis added.) This is a misstatement of the

(continued…)

¶9     And in regard to the negligence claim, the court agreed with WVC that Miller "did not plead that [WVC] made a voluntary undertaking to protect her, that the voluntary undertaking was done without reasonable care, and that [Miller] reasonably relied on this undertaking." Additionally, the court determined that under *Cope v. Utah Valley State College*, 2014 UT 53, 342 P.3d 243, Miller needed to demonstrate that WVC had a special relationship imposing a "specific duty of care toward" her if her claim was "based upon a public duty." Because Miller failed to "allege[] any facts to establish a special relationship," she could not "overcome the standard employed in *Cope*." Accordingly, the court determined Miller's complaint did not "state an actionable claim" and dismissed the suit. Miller appeals.

ISSUE AND STANDARD OF REVIEW

¶10     On appeal, Miller contends the district court improperly granted WVC's rule 12(b)(6) motion to dismiss. "A trial court's

---

(…continued)

law. Section 63G-7-301(3)(b)(ii) of the Utah Code provides that "[i]mmunity from suit of each government entity is *not* waived if the injury arises out of . . . a latent dangerous or latent defective condition of any public building." (Emphasis added.) The allegedly "open and obvious" nature of the danger was not an additional preclusion to waiver, but essential to Miller's position that immunity was waived. This is because immunity is waived if an injury is caused by a defective condition, then reinstated if that defective condition is latent. *See* Utah Code Ann. § 63G-7-301(a)–(b) (LexisNexis 2011). But the court's error on this point is not material. Its determination rested on the fact that Miller had not alleged facts amounting to a defective or dangerous condition, and so whether the condition was latent makes no difference to its decision. *See supra* ¶ 6 n.4.

decision to dismiss a case based on governmental immunity is a determination of law that we afford no deference. . . . Because the propriety of a 12(b)(6) dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard." *Van de Grift v. State*, 2013 UT 11, ¶ 6, 299 P.3d 1043 (citation and internal quotation marks omitted). Likewise, "the issue of whether a duty exists is a question of law which we review for correctness." *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998) (citation and internal quotation marks omitted).

ANALYSIS

¶11    Miller's appeal raises two main issues. First, she contends the district court erred in dismissing her premises liability claim for failure to demonstrate that immunity was waived under the GIA. She further contends the court erred in determining she failed to plead a negligence claim. But as a threshold matter, Miller asserts the case should be remanded because the district court "did not apply the correct standard" in that it "did not accept [her] description of the facts in the complaint to be true" or "consider all reasonable inferences to be drawn from those facts in a light most favorable to [her]."

I. Pleading Standard

¶12    Rule 8 of the Utah Rules of Civil Procedure requires a plaintiff "to submit a short and plain statement showing that the pleader is entitled to relief and a demand for judgment for the relief." *Peak Alarm Co. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 69, 243 P.3d 1221 (ellipsis, citation, and internal quotation marks omitted). The pleadings must be sufficient to give "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Id.* (citation and internal quotation marks omitted). "A motion to dismiss is appropriate only where it clearly appears that the plaintiffs would not be entitled to relief under the facts alleged or under

any set of facts they could prove to support their claim." *Baker v. Angus*, 910 P.2d 427, 430 (Utah Ct. App. 1996). "[M]ere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude dismissal. Additionally, the court need not accept legal conclusions or opinion couched as facts." *Koerber v. Mismash*, 2013 UT App 266, ¶ 3, 315 P.3d 1053 (citations and internal quotation marks omitted).

¶13   In this case, the district court agreed with WVC that Miller "did not plead that [WVC] made a voluntary undertaking to protect her, that the voluntary undertaking was done without reasonable care, and that [Miller] reasonably relied on this undertaking." But nothing in the court's ruling suggests it did not accept as true Miller's recitation of the facts; rather, the court concluded that the facts she pleaded, even if true, were not sufficient to demonstrate a cause of action. In addition, the court did not accept Miller's legal conclusions pertaining to her premises liability claim. In other words, it determined that, even assuming all of the facts Miller set forth as true, Miller could not show a cause of action for premises liability or negligence. We thus conclude the court did not apply the wrong standard.

## II. Premises Liability

¶14   We next determine whether the district court properly dismissed Miller's premises liability claim. The court determined dismissal was appropriate because Miller had not demonstrated that governmental immunity was waived.

¶15   Although governmental entities are usually immune from suit, immunity is sometimes waived. *See* Utah Code Ann. § 63G-7-301 (LexisNexis 2011). "Generally, to determine whether a governmental entity is immune from suit under the [GIA], we apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Blackner v.*

*Department of Transp.*, 2002 UT 44, ¶ 10, 48 P.3d 949. The parties agree WVC's operation of the fitness center is a governmental function, but disagree as to whether WVC's immunity was waived. In arguing for waiver, Miller relied on section 63G-7-301(3)(a)(ii), which states that governmental immunity is waived "as to any injury caused by . . . any defective or dangerous condition of a public building, structure, dam, reservoir, or other public improvement." Utah Code Ann. § 63G-7-301(3)(a)(ii).

¶16    The district court interpreted section 63G-7-301(3)(a)(ii) to "create liability as it concerns the structure or building itself, as the word 'of' refers only to the physical structure, not conditions found within." It declined to adopt Miller's broader interpretation of the statute, which inferentially would add the phrase "or in" after "of" to the statute. On appeal, Miller does not address the district court's reasoning but relies on *Barneck v. Utah Department of Transportation*, 2015 UT 50, 353 P.3d 140, to argue the district court misinterpreted the statute because it should be read through the lens of the common law. *See id.* ¶ 16. Miller thus bases her argument on section 344 of the Restatement (Second) of Torts and asserts that WVC's immunity is waived because she "was an invitee" whose injury was caused by a third party.

¶17    *Barneck* indicates that the "operative terms of the Governmental Immunity Act . . . coincide with the key terms . . . used to define the scope of premises liability in tort. . . . And we therefore interpret [those terms] in a manner incorporating the 'old soil' . . . long carried at common law." *Id.* (citations and additional internal quotation marks omitted). *Barneck* goes on to define a "dangerous condition" as "'[a] property defect creating a substantial risk of injury when the property is used in a reasonably foreseeable manner.'" *Id.* ¶ 17 (quoting Black's Law Dictionary 335 (9th ed. 2009)). The *Barneck* court concluded that governmental immunity is waived for injuries caused by dangerous conditions which the government defendant created

or of which it was aware, and which it should reasonably foresee would expose others to an unreasonable risk of harm. *Id.*

¶18 Using *Barneck*'s reasoning that the term-of-art sense of common law terms should be incorporated into the statute, Miller argues WVC's immunity is waived because "Utah courts have recognized liability against landowners for injuries to invitees caused by third parties on the premises." She relies on section 344 of the Restatement (Second) of Torts, which states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (Am. Law Inst. 1981).

¶19 But the cases on which Miller relies to support her position do not involve statutes or address governmental immunity. *See Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183–84 (Utah 1991) (holding that under section 344 of the Restatement (Second) of Torts, a jewelry business was not liable for injuries the plaintiff sustained during a robbery of the store); *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 489 n.5 (Utah Ct. App. 1991) (noting that the district court's finding that the defendant grocery corporation owed the customer plaintiff "a duty to take reasonable precautions to protect her from the criminal acts of third parties was correct" where the defendant had foreseen that the criminal acts would occur). And section 63G-301(3)(a)(ii) of the GIA, the basis of Miller's claim for waiver, does not address

harm "caused by the accidental, negligent, or intentionally harmful acts of third persons or animals." *See* Restatement (Second) of Torts § 344. Nor does it distinguish invitees from other classes of persons. Thus it is not clear that the statute should "incorporate the term-of-art sense[s] of these terms." *See Barneck*, 2015 UT 50, ¶ 16.

¶20 Miller also argues that an obstruction in a swim lane is a dangerous condition that creates a substantial risk of injury for swimmers who are using the lane in a reasonably foreseeable manner. But her contentions do not address the basis of the district court's decision: that governmental immunity is only waived for defective or dangerous conditions of a building, and waiver does not extend to conditions inside a building. In order to persuade us that the district court's interpretation of the statute was incorrect, Miller must address the reasoning of the district court's decision to interpret the statute as it did. *See Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441. Because Miller has not done so, we are not persuaded that the court erred.

¶21 In any event, we conclude the district court's statutory interpretation was correct. When interpreting statutes, "we look first to the statute's plain language," and "[w]hen the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed." *LPI Services v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135 (citation and internal quotation marks omitted). As stated, section 63G-7-301(3)(a)(ii) waives immunity for injuries caused by "any defective or dangerous condition of a public building." Utah Code Ann. § 63G-7-301(3)(a)(ii) (LexisNexis 2011). This waives immunity if there exists a dangerous condition *of* the building, but it does not specify that liability reaches to the conditions *within* a public building. We agree with the district court that "to adopt [Miller's] broader interpretation of the statute" would, in effect, have it read: "any defective or dangerous condition of *or in* a public building." (Emphasis added.) As the district court noted, "[a] plain reading

makes clear that the legislature intended to create liability as it concerns the structure or building itself, . . . not conditions found within."

¶22 Additionally, *Barneck* defines a dangerous condition as a "'property defect.'" *Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 17, 353 P.3d 140 (quoting Black's Law Dictionary 335 (9th ed. 2009)). Although property defects may occur within a building, such flaws do not encompass conditions unrelated to the structure of a building. The "dangerous condition" alleged by Miller was a teenager obstructing a swim lane. This is not a property defect and is not connected to a dangerous condition of the building itself. Therefore, the district court was correct in determining that Miller's complaint failed to sufficiently plead waiver of immunity under the GIA.

## III. Negligence

¶23 Miller next contends the district court erred in determining that WVC was immune from a negligence claim. In its decision, the court noted the GIA waives governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63G-7-301(4). To prevail in a negligence action, a plaintiff must prove "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused (4) the plaintiff to suffer legally compensable damages." *Cope v. Utah Valley State College*, 2014 UT 53, ¶ 11, 342 P.3d 243. In determining whether a government entity owes a duty of care to a plaintiff, courts "must evaluate whether the public duty doctrine dictates that an individual may not enforce a public duty in tort." *Id.* ¶ 12. The district court determined that the public duty doctrine barred Miller from bringing a claim against WVC and that Miller had not alleged any facts to establish the special relationship exception to the public duty doctrine, and therefore dismissed her negligence claim.

¶24 First, we determine whether the public duty doctrine applies, and if it does, we then determine whether Miller demonstrated an exception to it.

A. Public Duty Doctrine

¶25 The Utah Supreme Court addressed the public duty doctrine in *Cope*. A public duty is "an obligation owed to the general public at large." *Id.* ¶ 31 (citation and internal quotation marks omitted). Under the doctrine, "a plaintiff cannot recover for the breach of a duty owed to the general public, but must show that a duty is owed to him or her as an individual." *Id.* ¶ 12 (citation and internal quotation marks omitted). Thus, "a duty to all is a duty to none." *Cannon v. University of Utah*, 866 P.2d 586, 588 (Utah Ct. App. 1993) (citation and internal quotation marks omitted). By precluding liability actions when a government entity has "assume[d] a duty to protect the general public from harms," this doctrine prevents a municipality from being "mired hopelessly in civil lawsuits . . . for every infraction of the law." *Cope*, 2014 UT 53, ¶ 12 (citation and internal quotation marks omitted). "If a plaintiff's negligence claim is based upon a public duty," an exception to the doctrine applies when the plaintiff "establishes a special relationship that imposes a specific duty of care toward the plaintiff as an individual that is distinguishable from a public duty owed to the general public." *Id.*

¶26 In *Cope*, our supreme court determined that the public duty doctrine applies only to omissions of a government actor, not to its affirmative acts: "Where the harm is directly caused by a third party . . . the government is not liable for its failure to rescue the plaintiff from the external harm. Where the affirmative acts of a public employee actually cause the harm, however, the public duty doctrine does not apply." *Id.* ¶ 24 (footnote omitted). Affirmative acts are defined as "active misconduct working positive injury to others," and omissions are "passive inaction, a failure to take positive steps to benefit others, or to protect them from harm not created by any

wrongful act of the defendant." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 7, 275 P.3d 228 (citation and internal quotation marks omitted).

¶27 *Cope* explains, however, that "[a]ctive misfeasance" is not "confined to situations where an affirmative act directly causes harm to the plaintiff" but extends to situations where defendants "had affirmatively created conditions that gave rise to a duty to act in order to prevent harm." *Cope*, 2014 UT 53, ¶ 35. For example, "a surgeon who fails to sterilize instruments, causing an infection" or "an automobile manufacturer that neglects to adequately inspect an automobile for defects before selling it to a consumer" could be liable for misfeasance because their "actions had advanced to a stage where inaction would commonly result in injury." *Id.*

¶28 The facts in *Cope* illustrate this point. A college student enrolled in a ballroom dance class sustained an injury while practicing a particular lift. *Cope v. Utah Valley State College*, 2014 UT 53, ¶¶ 4–5, 342 P.3d 243. The parties emphasized different aspects of the incident to characterize the college's conduct as either an act or an omission: the student claimed the injury was caused by the instructor's direction to practice a new maneuver without spotters, and the college claimed the injury arose from a failure to provide spotters who could have prevented the injury. *Id.* ¶ 34. Our supreme court, noting that the issue did not depend "upon the semantic framing of [the] negligence claim," determined that the college's "actions in creating and overseeing the ballroom dance team had advanced to a stage where it had a duty to act in a reasonable manner to prevent injuries caused by participation with the dance team." *Id.* ¶¶ 35–36. Thus, the college's conduct was an affirmative act because the student did not allege that the college "failed to rescue her from an external threat," and because the college "created the conditions that led to her injury by creating the ballroom dance team." *Id.* ¶ 37. Accordingly, the public duty doctrine did not bar the student's claim. *Id.*

¶29 Referencing *Cope*, Miller contends that WVC's conduct was likewise an affirmative act. She asserts that WVC "actively engaged in the business of running a swimming pool," "promoted the swim lanes as a place where swimmers could rely on the swim lanes to be free of obstructions," and "hired lifeguards to monitor the swim lanes and establish[] rules for their safe use." She alleges these "affirmative acts" "launched a force or instrument of potential harm." *See id.* ¶ 35.

¶30 We disagree and conclude that WVC's conduct was an omission and not an affirmative act. First, Miller's complaint repeatedly characterized WVC's actions as a "failure to exercise reasonable care," and specifically noted WVC failed to keep the swimming lanes clear of hazards. Though her complaint implied that WVC engaged in the business of running a swimming pool, and therefore owed a duty to its patrons, it did not allege facts showing the public duty doctrine did not apply to her. Furthermore, Miller's complaint alleged her injury occurred because the lifeguard failed to remove a third person from her swim lane. The harm was directly caused by the presence of a third party, not by the affirmative acts of the lifeguard, and thus was caused by an omission. *See id.* ¶ 24.

¶31 We recognize the superficial similarity of these facts to those in *Cope*. In *Cope*, the college created and oversaw the ballroom dance team, which created "a duty to act in a reasonable manner to prevent injuries caused by participation with the dance team." *Id.* ¶ 36. In the same vein, WVC engaged in running a swimming pool, and by Miller's argument, should have a duty to act in a reasonable manner to prevent injuries to users of that facility. But a key difference distinguishes this case from *Cope.*

¶32 In *Cope*, the student was injured while following the direction of the dance instructor; here, Miller's injury was caused by her collision with a teenager in her swim lane, not by an act of or direction by the lifeguard. There is a difference between the

direct supervision an instructor gives while teaching students to perform a new maneuver and the general observations of a lifeguard over an entire pool. Because Miller's harm was "directly caused by a third party"—the teenager—and not by "the affirmative acts of a public employee"—the lifeguard—we conclude the public duty doctrine bars Miller's claim against WVC. *See Cope*, 2014 UT 53, ¶ 24. We next determine whether Miller qualifies for the special relationship exception to the public duty doctrine.

B.      Special Relationship

¶33    Because Miller's negligence claim is based upon a public duty, she must demonstrate a special relationship between herself and WVC "that imposes a specific duty of care toward [her] as an individual that is distinguishable from a public duty owed to the general public." *See Cope v. Utah Valley State College*, 2014 UT 53, ¶ 12, 342 P.3d 243. Miller asserts she had a special relationship with WVC because she was an invitee. But for Miller to establish a special relationship, she had to show WVC owed a duty "specifically to [her] as [an] individual[], rather than a duty owed to the public at large." *See Cannon v. University of Utah*, 866 P.2d 586, 589 (Utah Ct. App. 1993). That is not the case here. WVC did not owe Miller a duty different from that which it would owe all members of the public, namely, to monitor the swimming pool to keep the lanes free of obstructions.

¶34    In *Cannon v. University of Utah*, the Cannons crossed the street separating a parking lot from the University of Utah campus. *Id.* at 587. Two police officers were assigned "to the crosswalk to assist in controlling traffic." *Id.* "It had been raining and snowing intermittently, and the officers . . . had marked the crosswalk with flares." *Id.* But by the time the Cannons crossed the street, "the flares had burned out, and the two officers were sitting in their patrol car." *Id.* As the Cannons crossed the street, a vehicle struck them. *Id.* They sued the University, and the trial court "entered summary judgment in favor of the University,

concluding that . . . the officers owed [them] no duty of care." *Id.* at 588. This court determined that "to establish a negligence claim," the Cannons needed to demonstrate they had a special relationship with the University by "show[ing] that the University breached a duty owed specifically to them as individuals." *Id.* at 589. This court concluded the officers did not owe the Cannons a duty distinct from "a general duty owed to the public at large." *Id.* Rather, neither "the Cannons nor the University did anything to set apart the Cannons . . . from the general public. The service provided by the officers was the same for all pedestrians using the crosswalk . . . ." *Id.* Thus, "there was no special relationship between the Cannons and the University," because "the officers did not owe any specific duty to the Cannons which they did not already owe to the general public." *Id.* at 590.

¶35   Here, the lifeguard did not owe Miller a duty specific to her. Rather, WVC's lifeguards were employed to ensure the safety of the general public. The lifeguard monitoring the pool in which Miller was swimming was there to survey the conditions of the entire pool and ensure the safety of all its patrons. We thus conclude that Miller did not have a special relationship with WVC.

¶36   Because Miller's negligence claim is barred by the public duty doctrine and because she has not established a special relationship, we conclude the district court correctly dismissed her claim.

CONCLUSION

¶37   For the foregoing reasons, we affirm the decision of the district court.

_____