2018 UT App 106

# THE UTAH COURT OF APPEALS

DAVID SIMONS AND ALLISON SIMONS,
Appellants,
*v.*
SANPETE COUNTY,
Appellee.

Opinion
No. 20170258-CA
Filed June 7, 2018

Sixth District Court, Manti Department
The Honorable Wallace A. Lee
No. 150600057

Charles A. Gruber and David L. Morgan, Attorneys
for Appellants

Jesse C. Trentadue, Noah M. Hoagland, and Britton
R. Butterfield, Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and KATE A. TOOMEY
concurred.

HAGEN, Judge:

¶1     This case arises from a tragic car accident that resulted in the death of Brady Simons.[1] Brady's parents, David and Allison Simons (collectively, the Simonses), brought this wrongful death action against Sanpete County in their capacities as heirs and personal representatives of Brady's estate. The district court granted summary judgment in favor of Sanpete County, ruling

---

1. Because the appellants share a last name with the decedent, we refer to the decedent by his first name throughout this opinion. We intend no disrespect by the apparent informality.

that the county did not owe Brady a duty of care. Because we conclude that the public duty doctrine applies and that Sanpete County did not form a special relationship with Brady, we affirm.

BACKGROUND

¶2      After a motorist hit and killed a deer on SR-89 outside of Gunnison, Utah, she called Sanpete County's dispatch center at 6:21 a.m. to report the incident and notify authorities that the deer was lying in the middle of the road. Unfortunately, Utah Highway Patrol—the agency responsible for responding to such calls—never received notification of this dangerous road condition.[2]

¶3      At approximately 6:50 a.m., a second motorist, who was driving northbound on SR-89, hit the deer carcass, causing her vehicle to cross the center line and collide head-on with Brady's vehicle. Both drivers died as a result of the accident.

¶4      The Simonses sued Sanpete County,[3] alleging that

> [b]ut for the negligence of [Sanpete County], the
> Second Motorist would not have hit the dead deer
> carcass, would not have lost control of her vehicle,

---

2. Although the dispatcher testified that he did not recall whether he reported the call to Utah Highway Patrol, he noted that it would have been his custom and habit to do so.

3. The complaint also listed the State of Utah (Utah Department of Transportation, Utah Department of Wildlife Resources, Utah Department of Public Safety, and Utah Highway Patrol) and Gunnison City (Gunnison City Police Department) as defendants. Pursuant to an agreement among the parties, the district court dismissed these defendants with prejudice.

would not have crossed over into Brady's lane, and would not have collided with Brady resulting in the Accident and serious injuries which took Brady's life.

¶5 Sanpete County filed a motion for summary judgment, contending that the public duty doctrine bars the Simonses' negligence claims as a matter of law. In granting summary judgment, the district court concluded that the public duty doctrine applies in this case because Sanpete County's obligation to maintain its highways extends to anyone who may travel on them, and its failure to remove the deer carcass was an omission that did not contribute to the danger that otherwise existed. In addition, the district court determined that no special relationship had been created by statute or by Sanpete County's conduct. Accordingly, the court concluded that "the public duty doctrine prevents [the Simonses'] recovery in this case."

¶6 The Simonses timely appeal.

ISSUES AND STANDARD OF REVIEW

¶7 The Simonses contend that the district court erred in granting summary judgment in favor of Sanpete County. Specifically, the Simonses argue that (1) the public duty doctrine is inapplicable because Sanpete County performed an affirmative act when the dispatcher answered the warning call and (2) upon learning of the dangerous road condition, Sanpete County formed a special relationship with Brady making it reasonable to impose a duty of care.

¶8 We review a district court's legal conclusions and grant of summary judgment for correctness. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). Because the relevant facts are undisputed for the purposes

of Sanpete County's motion for summary judgment and this appeal, our review is limited to determining whether summary judgment is appropriate as a matter of law. *See id.*

ANALYSIS

¶9 To establish a claim of negligence, a plaintiff must prove that "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused (4) the plaintiff to suffer legally compensable damages." *Miller v. West Valley City*, 2017 UT App 65, ¶ 23, 397 P.3d 761 (quotation simplified). "A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the elements of the prima facie case justifies a grant of summary judgment to the defendant." *Morgan v. Intermountain Health Care, Inc.*, 2011 UT App 253, ¶ 8, 263 P.3d 405 (quotation simplified).

¶10 In this case, the district court ruled that the Simonses could not establish the first element of negligence: that Sanpete County owed Brady a duty of care. "Without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate." *Nelson ex rel. Stuckman v. Salt Lake City*, 919 P.2d 568, 572 (Utah 1996) (quotation simplified). Under the public duty doctrine, a governmental entity cannot be held liable for a "breach of an obligation owed to the general public at large." *Id.* (quotation simplified). Because "a duty to all is a duty to none," a plaintiff "must show that a duty is owed to him or her as an individual" rather than to the general public. *Cope v. Utah Valley State College*, 2014 UT 53, ¶ 12, 342 P.3d 243 (quotation simplified).

¶11 Where, as here, a plaintiff's claim is based on a government actor's failure to adequately discharge a public duty, "a presumption arises that this duty may not be a basis for liability in a lawsuit." *Id.* ¶ 30. But a plaintiff may rebut that presumption by establishing that "there is some special relationship between the government agency and the

individual[] that makes it reasonable to impose a duty." *Francis v. State*, 2013 UT 65, ¶ 25, 321 P.3d 1089 (quotation simplified).

¶12 To evaluate whether the public duty doctrine applies in this case, we must first determine whether the Simonses' claims are based on Sanpete County's failure to adequately discharge a public duty. It is undisputed that the Simonses' theory of liability rests upon a public duty; the question is therefore whether Sanpete County failed to discharge that duty by omission or whether it engaged in affirmative acts outside the scope of the public duty doctrine. Because we conclude that Sanpete County's conduct (or lack thereof) was an omission, we next consider whether the special relationship exception to the public duty doctrine applies.

## I. Sanpete County's Alleged Negligence Constituted an Omission.

¶13 The Simonses contend that the public duty doctrine is inapplicable to this case because Sanpete County performed an affirmative act when it "worked to become the designated 911 call center"; therefore, according to the Simonses, the dispatcher had a duty to act reasonably when answering the warning call and receiving detailed information about the dangerous road condition. In response, Sanpete County contends that the public duty doctrine applies to this case because "the alleged failure to report the deer carcass to Utah Highway Patrol is an omission by Sanpete County, not an affirmative act."

¶14 The Utah Supreme Court has determined that the public duty doctrine applies only to a government actor's omissions, not its affirmative acts. *See Cope v. Utah Valley State College*, 2014 UT 53, ¶¶ 25, 27, 342 P.3d 243. Affirmative acts include "active misconduct working positive injury to others." *Id.* ¶ 35 (quotation simplified). Conversely, omissions are defined as "passive inaction, i.e., a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant." *Id.* (quotation simplified). In

other words, "a negligent affirmative act leaves the plaintiff positively worse off as a result of the wrongful act, whereas in cases of negligent omissions, the plaintiff's situation is unchanged; she is merely deprived of a protection which, had it been afforded her, would have benefitted her." *Faucheaux v. Provo City*, 2015 UT App 3, ¶ 16, 343 P.3d 288 (quotation simplified).

¶15 The district court correctly concluded that the Simonses' claims are based on Sanpete County's alleged omissions. In the complaint, the Simonses claim that Sanpete County failed to notify Utah Highway Patrol of the dangerous condition, remove the deer carcass from the highway, or warn motorists. According to the Simonses, Sanpete County should be held liable for its inaction because, "by taking the warning call and receiving specific information about a specific accident in a specific location, [Sanpete County] put its figurative 'hand to the plow' such that it had a duty to go forward." The Simonses' argument is based on the Utah Supreme Court's decision in *Cope*. Specifically, the Simonses contend that "[j]ust as Utah Valley State College assumed a duty to act reasonably when it took the affirmative action of offering a ballroom dance class and hiring a dance instructor, once Sanpete County determined to be the 911 call center . . . and hired dispatchers to take calls and dispatch them in emergency situations, it took on the specific affirmative duty to act reasonably."

¶16 The lawsuit in *Cope* arose when a student sued her college because she was injured after a ballroom dance instructor encouraged her to perform a lift that she and her partner had never successfully completed. 2014 UT 53, ¶¶ 6–7. Our supreme court held that "the public duty doctrine [did] not negate [the college's] duty of care toward student members of a ballroom dance team [that had been] created and overseen by the college." *Id.* ¶ 3. In concluding that the college's conduct amounted to an affirmative act, the court determined that the college's actions "had advanced to a stage where it had a duty to act in a

reasonable manner to prevent injuries caused by participation with the dance team." *Id.* ¶ 36.

¶17    Sanpete County's conduct is distinguishable from *Cope*. Significantly, Sanpete County did not create the dangerous road condition, nor did it undertake to act in such a manner that it "launched a force or instrument of harm." *See id.* ¶ 35 (quotation simplified). Instead, in failing to rectify the dangerous road condition, Sanpete County had "stopped where inaction [was] at most a refusal to become an instrument for good." *See id.* (quotation simplified); *see also Miller v. West Valley City*, 2017 UT App 65, ¶¶ 30–32, 397 P.3d 761 (explaining that failure to remove a third person from the plaintiff's swimming lane was an omission because the harm was caused by that third party, not an affirmative act of the lifeguard). And although Sanpete County created the dispatch center, this case is further distinguishable from *Cope* because, unlike a ballroom dance team, the service that Sanpete County offered was itself a public duty. *See* 2014 UT 53, ¶ 38 ("Ballroom dance instruction is not a public duty owed to the general public at large." (quotation simplified)).

¶18    Indeed, in *Cope*, our supreme court cited with approval a case recognizing that "the public duty doctrine protects police dispatchers 'because such dispatchers do not create the plaintiff's peril.'" *Id.* ¶ 24 (quoting *Fried v. Archer*, 775 A.2d 430, 444 (Md. Ct. Spec. App. 2001)). While the facts of *Fried* are distinguishable because the caller provided misleading information, *see* 775 A.2d at 435–36, the policy behind limiting a government actor's liability is nevertheless instructive, *see Cope*, 2014 UT 53, ¶ 12. If providing a dispatch center and answering emergency calls, without more, are affirmative acts outside the protection of the public duty doctrine, the exception would swallow the rule and municipalities would be "mired hopelessly in civil lawsuits." *Id.* (quotation simplified). Applying the public duty doctrine to 911 personnel ultimately prevents depletion of government resources that might cause a "reduction of public safety services, including emergency response programs and

personnel, to the community." *Muthukumarana v. Montgomery County*, 805 A.2d 372, 397 (Md. 2002) (quotation simplified).

¶19    Sanpete County neither created nor increased the danger that existed on the roadway. Instead, it allegedly failed to adequately discharge its public duty by not relaying the 911 caller's information to the Utah Highway Patrol or taking other action to remove the obstruction or warn motorists. But, under the public duty doctrine, a governmental entity that assumes a duty to protect the general public from such harm cannot be held liable whenever it fails in this duty. Because this is such a case, the district court correctly ruled that the public duty doctrine applies.

## II. No Special Relationship Existed Between Sanpete County and Brady.

¶20    Because the public duty doctrine prevents an individual from enforcing a public duty in tort, Sanpete County did not owe a duty of care to Brady unless it had created a special relationship with him. *See Cope v. Utah Valley State College*, 2014 UT 53, ¶ 12, 342 P.3d 243. The Simonses contend that "[b]y taking the 6:21 am call[,] the Sanpete County dispatcher undertook specific action to protect persons or property, clearly creating a circumstance that may give rise to [a] special relationship." In addition, the Simonses contend that the first caller relied, to Brady's detriment, "on the Sanpete County dispatcher to dispatch the information and to protect other motorist approaching the dangerous traffic condition."

¶21    The Utah Supreme Court has recognized that the special relationship exception to the public duty doctrine applies in at least four circumstances:

> (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person

or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

*Francis v. State*, 2013 UT 65, ¶ 27, 321 P.3d 1089 (quotation simplified). The Simonses contend that the second and third circumstances are relevant here.

A.      No Specific Action to Protect a Distinct Group

¶22     To succeed on their claim under the second circumstance, the Simonses must show that Sanpete County "undertook specific action" and that its actions "were intended to protect a person or property." *See Faucheaux v. Provo City*, 2015 UT App 3, ¶¶ 20–21, 343 P.3d 288. The only action that Sanpete County undertook—answering the warning call—is distinguishable from the type of action taken in cases where courts have determined that a special relationship existed. *See Francis v. State*, 2013 UT 65, ¶¶ 4, 11–14, 321 P.3d 1089 (determining the government actor had undertaken specific action where the division of wildlife services tracked a dangerous bear for several hours, returned to remove attractants from the campsite, and then waved at the family heading toward that campsite); *Faucheaux*, 2015 UT App 3, ¶¶ 20–21 (concluding that the government actor had undertaken specific action where police entered the decedent's home, asked her if she was suicidal, inquired about powder they found on her person, and then tucked her into bed). Here, Sanpete County did not undertake any specific action to protect a person or property. It did not attempt to notify the highway patrol, locate or remove the deer carcass, or warn motorists of the obstruction.

¶23     Moreover, answering the 911 call was not an act to protect a distinct group of individuals like Brady. To invoke the exception to the public duty doctrine, the Simonses must

demonstrate that Brady "[stood] so far apart from the general public that we can describe [him] as having a special relationship to the governmental actor." *Francis*, 2013 UT 65, ¶ 31. Stated differently, "we will find a special relationship and consequent duty" if Brady "belong[ed] to a distinct group" that Sanpete County had taken specific action to protect. *Id.* ¶¶ 32–34 (quotation simplified).

¶24    A dispatcher's receipt of a 911 call does not constitute an act to protect or assist a specific group of individuals. Instead, these are "general actions taken to serve members of the public at large in need of emergency telephone services." *Muthukumarana v. Montgomery County*, 805 A.2d 372, 403 (Md. 2002); *see also Miller v. West Valley City*, 2017 UT App 65, ¶ 35, 397 P.3d 761 (concluding that the city employed lifeguards to ensure the safety of the general public, not the plaintiff specifically). Accordingly, we hold that Sanpete County did not form a special relationship with Brady by taking specific action to protect a distinct group of individuals in his position.

B.    No Detrimental Reliance by Brady

¶25    The Simonses also argue that the special relationship exception applies because Sanpete County's actions "reasonably induce[d] detrimental reliance by a member of the public." *Francis v. State*, 2013 UT 65, ¶ 27, 321 P.3d 1089. Specifically, they contend that a special relationship existed because the first motorist detrimentally relied on Sanpete County's dispatch service, forgoing the opportunity to notify other agencies.

¶26    While Utah courts have not specifically addressed whether third-party reliance can create a special relationship, other jurisdictions require "some form of direct contact between the municipality's agents and the injured party" and "that party's justifiable reliance on the municipality's affirmative undertaking." *Cuffy v. City of New York*, 505 N.E.2d 937, 940 (N.Y. 1987); *see Munich v. Skagit Emergency Commc'n Center*, 288 P.3d

328, 332 (Wash. 2012) (en banc) (requiring direct contact and justifiable reliance by injured party); *White v. Beasley*, 552 N.W.2d 1, 5 (Mich. 1996) (same); *City of Gary v. Odie*, 638 N.E.2d 1326, 1332–34 (Ind. Ct. App. 1994) (same); *Powell v. District of Columbia*, 602 A.2d 1123, 1130 (D.C. 1992) (same); *Sawicki v. Village of Ottawa Hills*, 525 N.E.2d 468, 478 (Ohio 1988) (same); *see also City of Rome v. Jordan*, 426 S.E.2d 861, 863 (Ga. 1993) (declining to require direct contact while still requiring justifiable reliance on the part of the injured party). Reliance by an immediate family member, acting on the injured party's behalf, can satisfy this requirement. *See Laratro v. City of New York*, 861 N.E.2d 95, 97 (N.Y. 2006) (recognizing that "direct contact and reliance by someone other than the plaintiff" is sufficient "only where the person making the contact was acting on behalf of his or her immediate family"); *see also Nelson ex rel. Stuckman v. Salt Lake City*, 919 P.2d 568, 573 n.7 (Utah 1996) (imputing mother's reliance to injured child). However, we have found no cases suggesting that detrimental reliance by an unrelated third person can give rise to a special relationship between the municipality and the injured party.

¶27    In accordance with this consensus of authority, we hold that a special relationship cannot be based on detrimental reliance by a member of the public who has no association with the injured party.[4] Under the circumstances of this case, the Simonses must demonstrate that Brady—not the first motorist— reasonably and detrimentally relied on Sanpete County's actions. Because Brady had no interaction with Sanpete County and was unaware that the first motorist had reported the obstruction, the Simonses have not established that he was induced to detrimentally rely on the dispatcher who answered

_____

4. The facts of this case do not require us to decide the degree of relationship necessary between the injured party and the person induced to rely on government action, because there is no suggestion that the first motorist was acting on Brady's behalf in any capacity.

the warning call. *See Jordan*, 426 S.E.2d at 864 (concluding that no special relationship existed where sexual assault victim was unaware that police had been called and thus could not show detrimental reliance).

¶28    Sanpete County did not form a special relationship with Brady, because it neither took specific action to protect a distinct group of individuals like Brady nor reasonably induced his detrimental reliance. Accordingly, the special relationship exception does not apply, and the public duty doctrine bars the Simonses' negligence claims.

CONCLUSION

¶29    The possibility that Brady's death might have been prevented makes this a heartbreaking case. Nevertheless, our decisions must be based on a fair and impartial application of the governing law. We conclude that the public duty doctrine applies because Sanpete County's alleged conduct was an omission, not an affirmative act. Because Sanpete County formed no special relationship with Brady, it cannot be held liable for failure to discharge a public duty. Accordingly, we affirm the district court's grant of summary judgment in favor Sanpete County.

———————